The STATE of Ohio, Appellee,

v.

JOHNSON, Appellant.

[Cite as *State v. Johnson,* 164 Ohio App.3d 792, 2005-Ohio-6826.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 04–CA–126.

Decided Dec. 23, 2005.

Craig W. Saunders, Assistant Prosecuting Attorney, for appellee.

Eric M. Schooley, for appellant.

---

GRADY, Judge.

{¶ 1} Defendant, Bradley Johnson, appeals from his conviction of and sentence for vehicular homicide.

{¶ 2} On May 1, 2004, defendant was driving his vehicle westbound on U.S. 42 in Cedarville Township, near its intersection with Townsley Road. At that same time, six bicycle riders who were participating in a race, including Robert Batchel, were also traveling westbound on U.S. 42 near Townsley Road. Defendant approached the bicyclists from the rear and attempted to pass them on the

left side of the two lane road, crossing a double yellow line. Defendant's speed was later estimated by the Ohio Highway Patrol at 62 miles per hour.

{¶ 3} As defendant approached the intersection of U.S. 42 and Townsley Road, Batchel began to turn left onto Townsley Road from U.S. 42 and was struck by defendant's vehicle. Witnesses indicated that some but not all of the cyclists used a hand signal to indicate their left turn onto Townsley Road and that Batchel did not look back to check for cars before turning. Batchel died at the scene as a result of injuries he sustained when defendant's vehicle struck him.

{¶ 4} The Ohio Highway Patrol's investigation revealed that defendant was not under the influence of alcohol or drugs at the time of the accident and that defendant had aided the victim by calling emergency personnel and attempting to administer CPR until medics arrived.

{¶ 5} Defendant was indicted on two misdemeanor charges: vehicular homicide, R.C. 2903.06(A)(3), and vehicular manslaughter, R.C. 2903.06(A)(4). Pursuant to a plea agreement, defendant entered a plea of no contest to the vehicular-homicide charge and was found guilty by the trial court. In exchange, the vehicular-manslaughter charge was dismissed.

{¶ 6} The trial court convicted defendant on his plea and later sentenced defendant to 180 days in jail with 120 days suspended on condition that defendant have no similar violations within five years, pay a $1,000 fine, and pay $16,175.91 in restitution. In addition, the court ordered community service, mental-health counseling, and a five-year license suspension without driving privileges for work.

{¶ 7} Defendant timely appealed to this court, challenging only his sentence. We suspended execution of defendant's sentence pending this appeal.

## FIRST ASSIGNMENT OF ERROR

{¶ 8} "The trial court failed to follow O.R.C. 2929.22 when imposing sentence upon the defendant."

{¶ 9} A trial court that imposes a sentence for a misdemeanor has discretion to determine the most effective way to achieve the purposes and principles of misdemeanor sentencing, which are to protect the public from future crime by the offender and to punish the offender. R.C. 2929.21(A) and 2929.22(A). The court may impose any available sanction or combination of sanctions. R.C. 2929.22(A). In imposing a sentence for a misdemeanor, the trial court must consider the factors set out in R.C. 2929.22(B)(1)(a) through (e), and the failure to do so constitutes an abuse of discretion. R.C. 2929.22(B)(1); *State v. Wagner* (1992), 80 Ohio App.3d 88, 608 N.E.2d 852. If the sentence imposed is within permissible statutory limits, a reviewing court will presume that the trial

court considered the sentencing factors in R.C. 2929.22(B), absent a showing to the contrary. Id.

{¶ 10} Defendant argues that because most of the sentencing factors in R.C. 2929.22(B)(1) weigh in his favor, the only logical explanation for the court's harsh sentence in this case is that the court failed to consider those factors.

{¶ 11} At the outset, we note that in his appellate brief, defendant makes repeated references to a former version of R.C. 2929.22 that does not apply in this case. The version that applies became effective January 1, 2004, four months prior to his offense. See 2002 Am.Sub.H.B. No. 490, 149 Ohio Laws, Part V, 9484.

{¶ 12} We agree with the state that some of the sentencing factors in R.C. 2929.22(B)(1) dealing with defendant's risk of recidivism, (B)(1)(b) and (B)(1)(e), and whether he poses a danger to others, (B)(1)(c), clearly favor defendant. He has no criminal record of any kind, and the court acknowledged that it is unlikely defendant will be back before the court again, given his spotless record. The court also observed that this was a tragic accident and that defendant did not intend to harm anyone because he did not have a cavalier attitude about the cyclists as he was passing them in his vehicle. The court characterized defendant as an outstanding citizen.

{¶ 13} With respect to the nature and circumstances of the offense, R.C. 2929.22(B)(1)(a), there are some matters that favor defendant. For instance, he did not have any drugs or alcohol in his system at the time of this accident, no road rage was involved, and defendant assisted the victim after the accident by administering CPR until medics arrived. On the other hand, other matters do not favor defendant.

{¶ 14} The Ohio Highway Patrol estimated defendant's speed at 62 miles per hour at the time of the crash. Furthermore, the court found that defendant had some fault with respect to this accident—that he caused the victim's death negligently while operating his motor vehicle. Specifically, defendant passed the cyclists by crossing over a double yellow line, and he failed to sufficiently slow down.

{¶ 15} Regarding the R.C. 2929.22(B)(1)(d) factor, which considers whether the victim's age, disability, or any other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious, the court mentioned the victim's status as a bicycle rider and that defendant had underestimated the power of his vehicle and the danger involved in passing the cyclists.

{¶ 16} We further note that R.C. 2929.22(C) requires the trial court, before imposing a prison term for a misdemeanor, to consider the appropriateness of imposing community-control sanctions. The trial court did that here, and in fact

imposed a combination of a prison term and community service, as well as a period of probation, all of which are recommended by the court's probation officer in the presentence report.

{¶ 17} Before imposing sentence, the trial court reviewed the presentence report and the many letters submitted on behalf of the victim and defendant, and the court heard from witnesses and counsel for both sides as to what the appropriate sentence should be. The trial court indicated that she had changed her mind ten or 15 times as to the appropriate disposition in this case. Although the court did not specifically address the factors in R.C. 2929.22(B)(1) at sentencing, we are satisfied from reviewing the record as a whole, including the court's statements at sentencing, that the court considered those sentencing criteria. Defendant has failed to affirmatively demonstrate that the court did not consider those sentencing factors.

{¶ 18} Also in this assignment of error, defendant complains about the maximum fine of $1,000 the trial court imposed. In imposing that fine, the trial court gave this reason:

{¶ 19} "The fine is difficult because there's—you know, there's no amount that makes sense. Mr. Robbins recommends a thousand dollar fine. I'm going to go with that. The only reason for a fine in this case because—I mean, it does not matter at all in that sense, but it's to reimburse the State Patrol for the extensive investigation they did. That is public time, so we'll have Mr. Johnson pay for that."

{¶ 20} In challenging the fine the trial court imposed, defendant argues that the court failed to consider the matters set forth in R.C. 2929.22(E) and (F). Defendant also argues that the court failed to consider his ability to pay the fine. Our review of R.C. 2929.22 discloses that there are no subsections (E) and (F) and, in any event, the imposition of financial sanctions in misdemeanor cases is governed by R.C. 2929.28. Nevertheless, defendant's complaint about the trial court's stated reason for imposing the fine—to reimburse the Ohio Highway Patrol for the costs of its investigation—has merit.

{¶ 21} R.C. 2929.28 specifies the types of financial sanctions that the trial court may impose in misdemeanor cases, including restitution, (A)(1); fines in varying amounts depending upon the degree of the offense, (A)(2)(a); state fines and costs, which include fines collected and paid to a law library association, (A)(2)(b) and R.C. 2949.111(A)(2); and reimbursement by the offender of the costs of sanctions incurred by the government, (A)(3)(a). This latter category includes the cost of implementing any community-control sanction, (A)(3)(a)(i), and the cost of confinement in a jail or other residential facility, (A)(3)(a)(ii). There is no provision in the statute specifically authorizing a financial sanction as reimburse-

ment to a law enforcement agency for the costs of its investigation. Pursuant to R.C. 2929.28(C)(1) and (2) and R.C. 2949.11, fines and reimbursements imposed pursuant to R.C. 2929.28(A)(3)(a) are to be paid to the county or city treasurer, as appropriate, for deposit into the general fund. The statute does not authorize payment of that money to the investigating law enforcement agency.

{¶ 22} We are aware that defendant failed to object or otherwise raise any challenge in the trial court to his fine, or to any other part of his sentence for that matter. Ordinarily, a failure to bring an error to the attention of the trial court at a time when the court could correct that error constitutes a waiver of all but plain error. *State v. Wickline* (1990), 50 Ohio St.3d 114, 552 N.E.2d 913. That is the case here with respect to defendant's complaint that the trial court failed to consider his ability to pay the financial sanctions it imposed. R.C. 2929.28(B) makes holding a hearing on defendant's ability to pay discretionary with the court, not mandatory. Defendant's failure to raise any issue regarding his ability to pay the financial sanctions imposed waives any error in that regard.

{¶ 23} Failure to object does not waive "plain error," however. *Wickline,* supra; Crim.R. 52(B). Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been different. *State v. Long* (1987), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804; *Wickline,* supra.

{¶ 24} Because the trial court was not authorized by law to impose a financial sanction upon defendant for the purpose of reimbursement of the Ohio Highway Patrol for the costs of its investigation in this case, and any such payments collected from defendant could not be passed on to that law enforcement agency as the court directed, the $1,000 fine imposed upon defendant for that purpose constitutes an abuse of the trial court's discretion and plain error. Accordingly, we will reverse and vacate that portion of the trial court's sentence imposing a fine.

{¶ 25} The first assignment of error is overruled in part and sustained in part.

## SECOND ASSIGNMENT OF ERROR

{¶ 26} "The trial court engaged in multiple ex parte communications giving an appearance of impropriety."

{¶ 27} Defendant argues that at various times throughout this case, the trial judge engaged in improper ex parte communications with the prosecutor, victim advocate, and probation officer, creating an appearance of impropriety and partiality that violates the Code of Judicial Conduct and defendant's due process rights. See *Disciplinary Counsel v. O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286.

{¶ 28} Defendant failed to raise this issue at any time in the trial court below, thereby waiving all but plain error. Because this record does not support defendant's allegations, as discussed below, no plain error is demonstrated.

{¶ 29} To support his first claim of an ex parte communication, defendant cites a statement by the trial court at the plea hearing wherein the court indicated that it had reviewed this case with both the prosecutor and defense counsel on a previous occasion and that the victim advocate participated in that discussion. The court's statement plainly indicates that defense counsel was present during that discussion. Therefore, this claim of an ex parte communication is refuted by the record.

{¶ 30} Defendant's next example of an alleged ex parte communication stems from events occurring at the sentencing hearing, when the prosecutor allegedly emerged from the judge's chambers just prior to that hearing. When the hearing began, the prosecutor stated:

{¶ 31} "We've had lengthy discussions on this case prior to the initial plea being entered, and I think our position was stated pretty clearly at that time. Again, I've talked with Counsel Schooley this morning and basically restated our position. Again, I think the court is aware of that."

{¶ 32} There is no evidence regarding what the prosecutor and the trial judge may have discussed in chambers prior to the sentence hearing. We will not speculate about such matters. Furthermore, the discussions that the prosecutor referred to when the hearing commenced appear to be the same discussions that the trial court referred to during the plea hearing, which we have addressed. Those discussions about this case took place before defendant's plea was entered and included defense counsel. No ex parte communication has been demonstrated.

{¶ 33} Defendant next complains that an ex parte communication occurred between the trial court and the probation officer who prepared the presentence investigation report while that report was being prepared. To support this claim, defendant points out that when the trial court offered that probation officer an opportunity to speak at sentencing, he stated:

{¶ 34} "Thank you, your Honor. You will see the recommendation, as I spoke with you, you will see 90 days in jail, 30 days suspended. I worded that wrong. I apologize. It was actually six months in jail, 90 days suspended."

{¶ 35} Contrary to defendant's suggestion, this exchange does not demonstrate that the court was involved in the process of the presentence investigation or that it influenced the probation officer's recommendation. At most, it reveals that the probation officer communicated his recommendation to the trial court, a practice

that is not improper and occurs in any event when the court receives the presentence report.

{¶ 36} In this case, the presentence report was provided to the prosecutor and defense counsel before the sentencing hearing. The record contains no evidence that supports defendant's suggestion that the trial court urged the probation officer to orally amend the presentence report recommendation, from 90 days with all time suspended to 180 days with 90 days suspended, at the urging of the victim's family. On this record, all that is demonstrated is that the probation officer's recommended sentence was incorrectly stated and that he corrected his misstatement at the sentencing hearing. No improper ex parte communication has been demonstrated.

{¶ 37} As a final example of an alleged ex parte communication, defendant points to the many letters sent to the trial court on the victim's behalf by his family, friends, and co-workers. The court indicated at sentencing that it had reviewed all of the written correspondence it received, some of which was submitted on behalf of defendant as well as the victim. Defendant alleges that none of that correspondence was provided to him, despite the court's earlier statements at the plea hearing that it would share with defense counsel any letters received, and therefore defendant was unable to review the documents for accuracy.

{¶ 38} The letters defendant complains about are a part of the trial court file in this case, and as such, that material is ordinarily available to both parties on request and does not constitute ex parte communication. There is no allegation by defendant that he attempted to obtain and review the letters but was denied access. The record fails to support defendant's claim that improper ex parte communications occurred.

{¶ 39} The second assignment of error is overruled.

## THIRD ASSIGNMENT OF ERROR

{¶ 40} "The trial court judge lost her impartiality by becoming overcome with emotion during sentence."

{¶ 41} Defendant argues that his due process rights were violated because during sentencing, the trial judge was briefly overcome with emotion and began to cry. According to defendant, the court became so sympathetic toward the victim's family that the court lost its sense of fairness and impartiality and became biased against defendant. We disagree.

{¶ 42} Judicial bias is a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the

formation of a fixed anticipatory judgment on the part of the judge, as distinguished from an open state of mind that will be governed by the law and the facts. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34.

{¶ 43} As previously discussed, this case involved a tragic accident that resulted in the sudden, unexpected death of the victim. The court recognized that both the victim and defendant were outstanding, model citizens. Understandably, emotions were running high at the sentencing hearing. During that proceeding, a number of the victim's family members and friends spoke about how the victim's death had affected them. Immediately thereafter, the court acknowledged that the families of both the victim and the defendant were in tremendous pain and that nothing the court might do would take that pain away because the court could not bring the victim back. The following then took place:

{¶ 44} "The accident in this case—I'm sorry. Judges are not supposed to cry. See how you people got to me. Robbie, I think that is your fault.

{¶ 45} "The accident in this case had some fault on the part of the Defendant, obviously, and the fault is I think something, as his Counsel points out, that probably every one of us does on the road is we forget that we are pushing 2,000 pounds of glass and steel down the road." (T. 57–58).

{¶ 46} The fact that the trial judge was briefly overcome with emotion and cried does not demonstrate judicial bias. It merely demonstrates that the trial judge is human and can understand and relate to other people's feelings and emotions. A review of the sentence hearing in its entirety fails to reveal any undue friendship or favoritism toward the victim's family, much less the formation of a fixed anticipatory judgment. *LaMar*, supra.

{¶ 47} The trial judge stated at the sentencing hearing that she had heard all of the witnesses, read all of the letters submitted by supporters of both parties, and had "changed her mind ten or fifteen times about what should be done." We further note that the court suspended more of defendant's jail time than its probation officer had recommended. No judicial bias against defendant has been demonstrated.

{¶ 48} The third assignment of error is overruled.

## FOURTH ASSIGNMENT OF ERROR

{¶ 49} "The trial court failed to follow sentencing precedent from its own docket in similar matters."

{¶ 50} Defendant argues that he was denied fundamental fairness because in imposing sentence, the trial court failed to follow its own sentencing precedent in vehicular-homicide cases. Specifically, defendant cites one other

vehicular-homicide case in which this same trial judge did not impose any prison term, probation, or community service as part of the sentence. The state in response has identified four other vehicular-homicide cases in which this same trial judge imposed a combination of sanctions, including jail time, community-control sanctions, fines, and restitution, just as was done in this case.

{¶ 51} Sentences imposed for misdemeanor offenses must be "consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B). To that extent, prior sentences the court imposed in like cases are precedent, but they are not necessarily binding. The court must also seek to achieve the two overriding purposes of misdemeanor sentencing in R.C. 2929.21(A), which requires considering the impact of the offense on the victim, the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim, as well as the other purposes of R.C. 2929.21(B), reflecting the seriousness of the offense and its impact on the victim.

{¶ 52} Contrary to defendant's claim, the trial court did not impose the most severe sentence it could have, because it suspended over one-half of the jail time it imposed, which it was not obligated to do. More importantly, the sentence imposed was within authorized statutory limits and consisted of a combination of sanctions, including a jail term, community control, and financial sanctions, which are specifically authorized by R.C. 2929.22 through 2929.28.

{¶ 53} In any event, we conclude that if defendant intends to argue that the sentence imposed in a particular misdemeanor case is so inconsistent with sentences imposed by that same court for similar offenses committed by similar offenders as to be disproportionately harsh, defendant must object or otherwise raise that issue in the trial court, affording that court an opportunity to correct the question. Having failed to do that here, defendant has waived all but plain error. No plain error is demonstrated.

{¶ 54} The fourth assignment of error is overruled.

## FIFTH ASSIGNMENT OF ERROR

{¶ 55} "The trial court failed to provide an unambiguous and definite sentence."

{¶ 56} Defendant complains that in imposing community service as part of his sentence, the trial court did not specify at the sentencing hearing the number of hours or the type of service to be performed by defendant. Rather, the court took that matter under advisement. Defendant argues that that procedure violates his rights to due process.

{¶ 57} The trial court observed that by suspending a portion of defendant's jail time on certain specific conditions, the court was better able to maintain some

control over defendant and impose certain requirements, such as prohibiting future similar conduct and requiring the immediate payment of restitution to the victim's family. Defendant has not directed our attention to any authority that holds such a sentence unlawful. To the contrary, the court is charged with determining the most effective way to achieve the purposes and principles of misdemeanor sentencing set out in R.C. 2929.21, and the court may impose any combination of sanctions authorized by R.C. 2929.24 through 2929.28. See R.C. 2929.22(A).

{¶ 58} At the sentence hearing, the victim's family requested that defendant be required to perform some type of community service related to traffic/bicycle safety. The trial court mentioned that having defendant go to schools and talk to young drivers about this incident might be one possibility, but on the other hand, there is some question whether defendant's distraught mental and emotional state as a result of this accident might prevent him from doing that. The court indicated that it would not decide the precise terms of defendant's community service at this time, preferring instead to have defendant think about what type of service he might be able to do while he serves the jail-term portion of his sentence. The court stated that it would take up the issue of community service again at a later date.

{¶ 59} The court is authorized by R.C. 2929.27(A)(3) to impose on the offender "[a] term of community service of up to five hundred hours." In this context, the word "term" is defined to mean a fixed period of time. Per Crim.R. 32(C), the judgment of conviction must set forth the sentence imposed. Therefore, the term of any community service the court requires a defendant to perform must be specified when community service is a sanction imposed. R.C. 2929.27(A)(3) speaks of a term in hours. Therefore, the trial court erred when it failed to specify the period, in hours, of defendant's term of community service.

{¶ 60} R.C. 2929.27(A)(3) does not likewise require the court to specify what service a defendant must perform. The court is afforded very broad discretion in that regard. The particulars are typically worked out in conjunction with the court's probation officer after sentence is imposed. On the facts of this case, we find no error or abuse of discretion in failing to state, when sentence was imposed, what defendant's community service must be.

{¶ 61} The fifth assignment of error is sustained in part.

## SIXTH ASSIGNMENT OF ERROR

{¶ 62} "The trial court improperly awarded restitution."

{¶ 63} Defendant argues that the trial court improperly awarded restitution for the victim's funeral expenses and lost wages for the victim's sister and the

victim's son. As support for his claim, Defendant cites R.C. 2929.11(E). However, R.C. 2929.11 sets forth the overriding purposes of felony sentencing, and has no application to this particular claim.

{¶ 64} R.C. 2929.28, effective June 1, 2004, is the section applicable to defendant's claim. That section governs financial sanctions in misdemeanor cases and provides:

{¶ 65} "(A) In addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a misdemeanor, including a minor misdemeanor, may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

{¶ 66} "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss.

{¶ 67} "* * *

{¶ 68} "The court shall determine, or order to be determined, the amount of restitution to be paid by the offender. The court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information. The court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount of restitution."

{¶ 69} The restitution in this case was requested by the victim's family and submitted to the court via the victim-witness advocate. The restitution requested totaled $16,175.91 and included the following: a $5,826.35 funeral bill; $945 for burial; $3,630.56 for a headstone; $480 for lost wages for the victim's sister; $294 for lost wages for the victim's son; and $5,000 for the victim's bicycle and related gear. The trial court indicated that receipts were available for these items, including the victim's racing bicycle, which was expensive.

{¶ 70} A review of the record reveals that receipts were provided to the trial court for the funeral bill, the burial expenses, and the headstone. Also, a receipt was provided for the amount of lost wages claimed by the victim's sister as a result of the victim's death. No receipt was submitted for the lost wages claimed by the victim's son or for the cost of the victim's racing bicycle and related gear.

{¶ 71} R.C. 2929.28(A)(1) limits restitution to the economic loss suffered by the victim or his survivors as a result of the offender's crime. That would encompass claims by the victim's sister and son for lost wages due to work missed as a result of the victim's death. Such claims represent an economic loss

suffered by them. As we previously discussed, defendant did not object or raise any challenge in the trial court to any part of his sentence, including the restitution ordered by the court. Defendant did not object to either the amount of restitution ordered or the items for which restitution was awarded. Therefore, any error in awarding as restitution wages lost by the victim's son absent some corroboration is waived.

{¶ 72} The restitution ordered by the court for expenses associated with the victim's funeral, burial, and headstone, as well as for the victim's racing bicycle, is proper because those items represent economic loss suffered by the victim's estate as a direct result of defendant's offense. Nevertheless, defendant challenges the amount of restitution, particularly with respect to the bicycle, for which no receipts were submitted to the trial court. R.C. 2929.28(A)(1) specifies that the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount of restitution. At the hearing, the victim or survivor has the burden by a preponderance of the evidence to prove the amount of restitution sought from the offender. If defendant was dissatisfied with the amount of restitution ordered or with the lack of evidence to support the restitution requests, defendant had an obligation to object and raise that issue in the trial court. Having failed to do so, defendant has waived any error in that regard.

{¶ 73} The sixth assignment of error is overruled.

## SEVENTH ASSIGNMENT OF ERROR

{¶ 74} "Based upon the totality of the circumstances, the trial court abused its discretion in sentencing."

{¶ 75} In this assignment of error, defendant argues that the cumulative effect of all of the trial court's sentencing errors denied him due process of law. Except for the period of his term of community service and the "plain error" we have noted with respect to the fine, which are severable matters, we have found no merit in any of defendant's other claimed sentencing errors. There is no "cumulative effect."

{¶ 76} The seventh assignment of error is overruled. The judgment of the trial court is reversed in part, and the cause is remanded for resentencing on the matters of community service and the fine, if any, to be imposed. The judgment is otherwise affirmed.

Judgment reversed in part
and affirmed in part,
and cause remanded.

BROGAN, P.J., and YOUNG, J., concur.

FREDERICK N. YOUNG, retired from the Court of Appeals, Second District, sitting by assignment.