DECISION. *Page 2 
{¶ 1} Defendant-appellant Daryl Black was found guilty of assault after a bench trial. The trial court sentenced him to 180 days in jail and stayed the sentence pending this appeal.
 {¶ 2} Black was charged with assault after Jack Orthman was injured during an altercation with Black at Orthman's apartment in May 2006. Orthman's close friend and Black's mother, Meryl Hammond, was in the apartment during the altercation.
 {¶ 3} In his first two assignments of error, Black challenges the sufficiency of the evidence to support his conviction, as well as the weight given to it by the trial court. He argues that he proved his actions were justified by self-defense. We disagree.
 The Trial Testimony {¶ 4} Orthman testified that Black came to his apartment door on the day of the assault, and that Orthman let him in. Shortly after Black's arrival, Orthman told Black, "Look, I'm tired of you disrespecting me in my home." Then, according to Orthman, Black "went off like a chain saw," swinging his fists at Orthman. Orthman tripped over a tool lying on the floor and fell to the floor, where Black began pounding his face and digging his thumb into Orthman's eye socket. Black also tried to choke him and twist his neck. After about 15 minutes, Black let go of Orthman's head and left the apartment with Hammond. Orthman then called the police. Orthman unequivocally testified that Black was the only aggressor in the altercation, and he denied having any weapon or threatening Black. *Page 3 
 {¶ 5} Orthman stated that the severity of his injuries did not become apparent until the next morning, when Hammond took him to the hospital for treatment.
 {¶ 6} Police Officer Michael Dye arrived at Orthman's apartment shortly after the altercation. He testified that Orthman had bloodshot eyes and scrapes around his eyes. After Dye's testimony, the state rested.
 {¶ 7} Black's mother, Meryl Hammond, testified for Black. She stated that before the altercation took place she heard Orthman say something to Black about showing respect. She then saw Orthman approach Black from behind and raise his hand as if he was going to place it on Black's shoulder. Black then turned around and shoved Orthman to the ground, where he pinned him to the floor with his body. She saw both men take swings with their arms. She saw a knife in Orthman's hand at one point when he was pinned under Black. She did not hear Orthman threaten Black with the knife, but she did hear Black repeatedly ask Orthman if he had had "enough" of his thumb in his eye socket. She further testified that as soon as Orthman gave an affirmative response to Black's taunting instead of swearing at Black, Black released his hold. Black then left the apartment with her.
 {¶ 8} Hammond stated that Orthman had yelled for her to call the police during the altercation but that she could not because the men were in the hallway blocking her path.
 {¶ 9} When asked about how Orthman had obtained the knife, Hammond said that she did not see Orthman pull it out of his pants and that Orthman often had the knife, a switchblade, lying out in the apartment. *Page 4 
 {¶ 10} On cross-examination, Hammond confirmed Orthman's testimony that she had taken him to the hospital the morning after the altercation because of facial swelling that had occurred overnight.
 {¶ 11} Black also testified and provided his own version of the events. Black claimed that that he had pushed Orthman to the ground after Orthman had grabbed the back of his neck in a menacing way while he was talking to Hammond. Then, according to Black, Orthman sat up, pulled a knife out of his belt, and threatened to kill him. Black claimed he then tackled Orthman and took the knife from him. But Orthman continued his death threats. Both men remained on the ground and wrestled. Orthman hit Black several times and tried to choke him. Black recalled that he took a few swings and might have hit Orthman. Black added that Orthman cut his chest with the knife. Black concluded his direct examination by stating that he was not able to leave at any time during the altercation.
 {¶ 12} On cross-examination, Black admitted that he was pushing his thumb in Orthman's eye socket, but stated that this was necessary because Orthman had continued to reach for the knife. Black also admitted that he had been convicted of a felony.
 {¶ 13} After the defense rested, the state called Hammond as a rebuttal witness. She stated that she had taken the knife from Orthman during the struggle. And she denied seeing a knife-cut injury on Black.
 The Trial Court's Decision {¶ 14} After hearing this evidence, the trial court rejected Black's claim of self-defense and found Black guilty of assault. The court specifically stated that Black's aggressive demeanor on the witness stand and his comparatively younger age were factors it had considered in weighing the credibility of the witnesses' testimony. *Page 5 
The court was also persuaded by the lack of corroboration of Black's testimony by his mother "[a]nd primarily because the victim is in his home. He can do what he wants in his home and he can be armed in his home." Black argues that this last comment demonstrates that the court had applied an incorrect legal standard in evaluating his defense. We are unpersuaded. The court's comment appears to have been in response to defense counsel's argument that Orthman was the aggressor because Black and his mother had alleged that he had a knife.
 Self-Defense Elements {¶ 15} The trial court is presumed to know the elements of a claim of self-defense. Where, as here, the state presents sufficient proof of all the elements of assault,[1] the defendant is required to establish by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force; and (3) he did not violate any duty to retreat or avoid the danger.[2] The elements are cumulative.[3]
 {¶ 16} Although the evidence in this case was in conflict, the trial court was free to discredit Black's testimony and to find against Black on any of the self-defense elements. Weighing the credibility of witnesses was primarily for the trier of fact.[4]
 {¶ 17} In sum, we hold that the trial court had before it sufficient evidence on all the elements of the crime of assault. Further, we hold that there is no basis to conclude that the trial court lost its way or committed a manifest miscarriage of *Page 6 
justice in resolving the factual issues against Black.[5] Accordingly, we overrule the first and second assignments of error.
 Misdemeanor Sentencing {¶ 18} In his third assignment of error, Black claims that the trial court did not comply with R.C. 2929.21 in imposing his sentence, a 180-day jail term, which was the maximum term for a first-degree misdemeanor. Black argues that the trial court failed to consider the purposes of misdemeanor sentencing before imposing this sentence.
 {¶ 19} A trial court is required to impose a sentence that fulfills the dual purposes of misdemeanor sentencing, which are to protect the public from future crimes and to punish the offender.[6] Unless a specific sanction is required, the court has the discretion to impose any available sanction or a combination of sanctions.[7] When imposing a misdemeanor sentence, the trial court must be guided by the factors set out in R.C. 2929.22(B)(1)(a) through (e) and other any other factors "relevant to achieving the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code."[8] Before imposing a jail term as a sentence for a misdemeanor, the court must first consider the appropriateness of a sentence with a community-control sanction.[9] The trial court does not need to make specific findings or to give its reasons before imposing a maximum sentence.[10]
 {¶ 20} The trial court's failure to consider the criteria set out in the sentencing statutes constitutes an abuse of discretion. But a reviewing court must *Page 7 
presume that the trial court considered the sentencing criteria if the sentence imposed is within permissible statutory limits, unless the defendant demonstrates the contrary.[11]
 {¶ 21} Black has failed to overcome the presumption that the trial court considered the sentencing criteria in imposing the maximum term. In this case, the trial court proceeded to the sentencing hearing immediately after finding Black guilty of the assault. During the hearing, the court referred to the fact that Black had a criminal history and a pending charge for driving under the influence. The court addressed Black and asked if he wished to say anything. Black explicitly said that he was not sorry. The court then sentenced Black to 180 days in jail. After reviewing the record, we hold that the trial court did not abuse its discretion in imposing this sentence.
 {¶ 22} Black also claims that the trial court's response to his request for an appellate bond demonstrates that the court did not properly consider the statutory sentencing criteria. For the following reason, we find no merit to this contention.
 {¶ 23} After the court sentenced Black, Black asked for an appellate bond. The court replied to Black's bond request by stating, "[Y]eah, I have no problem. Do you know what that will do? That will double your sentence because you'll be out on bond for me and you get no credit and you tried your entire case and just for the Court of Appeals. I resolve credibility. I determine whose [sic] believable or not. And sure. I'll set your appeal bond at $5,000 and primarily because there's absolutely no showing of remorse and like you said, you don't care. I don't care."
 {¶ 24} The trial court's reply may have been an inappropriate comment on Black's prospects on appeal, but we cannot say that the court's comments, which *Page 8 
were made after Black was sentenced, demonstrated that the trial court had failed to consider the statutory criteria in imposing the maximum term.
 {¶ 25} Accordingly, we overrule the third assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
HILDEBRANDT, P. J., CUNNINGHAM and DINKELACKER, JJ.
[1] See R.C. 2903.13(A); State v. Waddy (1992), 63 Ohio St.3d 424,430, 588 N.E.2d 819.
[2] State v. Jackson (1986), 22 Ohio St.3d 281, 283,490 N.E.2d 893.
[3] Id. at 284.
[4] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[5] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[6] R.C. 2929.21.
[7] R.C. 2929.22(A).
[8] R.C. 2929.22(B)(2).
[9] R.C. 2929.22(C).
[10] See State v. Miller, 1st Dist. No. C-050821, 2006-Ohio-2337
(holding that the judicial fact-finding required by R.C. 2929.22(C) before imposing a maximum jail term is unconstitutional, and severing the fact-finding language from the statute).
[11] See State v. Johnson (2005), 164 Ohio App.3d 792, 2005-Ohio-6826,844 N.E.2d 372, at ¶ 9. *Page 1