[Cite as *State v. Peterson*, 2012-Ohio-735.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :        C.A. CASE NO.    24623

v.                                               :        T.C. NO.    10CRB12187

KENNETHA M. PETERSON                             :          (Criminal appeal from
                                                            Municipal Court)

    Defendant-Appellant              :

                                                 :

    . . . . . . . . . .

**O P I N I O N**

Rendered on the   24th   day of    February  , 2012.

. . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

BEN SWIFT, Atty. Reg. No. 0065745, P. O. Box 49637, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}** Defendant-appellant Kennetha Peterson appeals her conviction and sentence for one count of assault, in violation of 2903.13(A), a misdemeanor of the first degree.  Peterson filed a timely notice of appeal with this Court on April 25, 2011.

    **{¶ 2}** Between two and three p.m. on the afternoon of November 8, 2010,

the victim, Ariane Wright, went to visit Bruce Davis, the father of her unborn child, at his apartment located at 3325 Haberer Avenue in Dayton, Ohio. Wright testified that her purpose in visiting Davis that day was to ask him to accompany her to a prenatal checkup. Wright testified that she was four months pregnant at the time. Wright also testified that her friend, Amber, drove her to Davis' apartment and waited outside in the car while Wright went inside the building.

{¶ 3} Upon arriving at Davis' apartment, which was located on the first floor of a three-story building with interior hallways lined with doors that opened to individual units, Wright testified that she knocked on his door. After knocking for less than a minute, the tenant who lived in the unit right next door to Davis, defendant-appellant Peterson, stepped out of her apartment, called Wright a "bitch," and told her to "stop banging on [Davis'] door." Wright, who testified that she had no prior interaction with Peterson, told her to mind her own business.

{¶ 4} Wright testified that at this point in the argument, two younger women walked out of Peterson's apartment and into the hallway. Peterson testified that one of the women was her niece, Davinna Taylor. Taylor stepped directly in front of Wright and stated that she was in a sexual relationship with Davis. During the ensuing verbal altercation with Taylor, Wright testified that Peterson approached her from the left side and struck her on the right cheek with a closed fist, knocking her backwards. Wright testified that Taylor began to attack her, as well. At this point, the third woman, whom Wright believed to be Peterson's daughter, Tashuna Blackshear, came into the hallway and sprayed Wright in the face with mace. Wright testified that she immediately fell to the floor, and the

three women, including Peterson, began kicking and taunting her. Wright specifically testified that she heard Peterson say that she would "beat [Wright's] baby out of [her]."

**{¶ 5}** Wright testified that Davis came out of his apartment and separated the women. Davis then moved Wright into his apartment and attempted to wash the mace off of her face. Eventually, Davis walked Wright outside to where her friend, Amber, was waiting in her car. Amber took Wright to her prenatal doctor, where she was initially treated for the injuries that she received during the attack. Thereafter, Wright was referred to the hospital for further treatment for her injuries.

**{¶ 6}** During the trial, Peterson testified in her own defense and gave a very different account of the events which transpired on the day Wright was assaulted. Initially, we note that Peterson testified that Wright had visited Davis' apartment for the first time at seven a.m. on the date of the incident. Peterson testified that Wright knocked on Davis' door for several minutes before Peterson came out of her apartment and confronted her. Peterson testified that Wright then produced a key to Davis' apartment, unlocked the door, and went inside. Peterson further testified that once Wright entered Davis' apartment, she came into contact with Taylor, who was already in the apartment. Peterson testified that Taylor informed Wright that she was in a sexual relationship with Davis, and the two women argued, after which Wright left the building. Wright testified during cross-examination, however, that she did not visit Davis' apartment on November 8, 2010, prior to arriving in the afternoon.

**{¶ 7}** Peterson also testified that Wright returned to Davis' apartment between one and two p.m. on the same day and "banged" on Davis' door and hers, as well.

Peterson claimed that Wright was accompanied by a friend when she returned, but Wright testified that she was alone. Peterson testified that as soon as she opened the door, Taylor rushed past her and attacked Wright. Peterson testified that she fought with Wright's unidentified friend but did not fight with Wright. Peterson also testified that she was the individual wielding the mace, and she sprayed Wright's friend, not Wright, with the substance. Peterson testified that Blackshear and Davis joined in the fight and began attacking Wright along with Taylor. On cross-examination, Peterson testified that Davis had a bat and was trying to hit Wright and Blackshear with it, but she struggled with Davis in order to protect both women. Peterson also testified that Wright's friend hit her in the face with a bat during the melee.

{¶ 8} Upon cross-examination, Peterson acknowledged that after the incident she called the police to her apartment to report the incident. Peterson testified that when the police arrived at approximately 3:30 p.m., she told them that Wright had been banging on Davis' door and her door at 2:45 p.m. Peterson testified that she told the police that she opened her door and immediately began fighting with Wright. After admitting that she told the police that she started the fight with Wright, Peterson changed her testimony and stated that she never fought with Wright, sprayed her with mace, or kicked her. Peterson testified that she only fought with Wright's friend. Wright and Peterson were the only two individuals who testified during trial.

{¶ 9} After a bench trial held on March 4, 2011, the court found Peterson guilty of assault. At the sentencing hearing on April 19, 2011, the trial court sentenced Peterson to 180 days in jail, but suspended 150 days, leaving a balance of thirty days to be

served. The trial court ordered Peterson to pay a $250.00 fine and court costs, and sentenced her to two years of non-reporting community control. Lastly, the trial court ordered Peterson to have no contact with Wright. On April 28, 2011, Peterson requested a stay of execution of her sentence pending the outcome of her appeal, which was subsequently granted.

{¶ 10} Peterson's first assignment of error is as follows:

{¶ 11} "APPELLANT'S CONVICTION IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 12} In her first assignment, Peterson contends that there was insufficient evidence adduced at trial to convict her of assault. Additionally, she argues that the trial court's guilty verdict was against the manifest weight of the evidence.

{¶ 13} Although both are raised by Peterson in a single assignment of error, "a challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315.

{¶ 14} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost

its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. (Internal citations omitted).

{¶ 15} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 16} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 17} R.C. § 2903.13(A) describes the offense of assault as follows:

{¶ 18} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶ 19} Upon review, we conclude that the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Peterson's conviction for the

charged offense.   Wright unequivocally testified that Peterson confronted her in the hallway of Davis' apartment building and struck her in the face.   Wright further testified that Peterson sprayed her with mace, which caused her to fall down.   Wright testified that when she fell to the ground, Peterson and two other women kicked her and taunted her until Davis came out of his apartment and stopped the fight.   When viewed in a light most favorable to the prosecution, rational minds could have reached the conclusion that the State proved beyond a reasonable doubt that Peterson assaulted Wright.

{¶ 20} Peterson's conviction is also not against the manifest weight of the evidence.   The credibility of the witnesses and the weight to be given their testimony are matters for the  jury to resolve. The only evidence presented by Peterson was her own testimony which contained several inconsistencies regarding the time of the assault and, more importantly, the role she played in the attack.   The trial court did not lose its way simply because it chose to believe the State's witness, which it had a right to do.   Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 21} Peterson's first assignment of error is overruled.

{¶ 22} Peterson's second and final assignment of error is as follows:

{¶ 23} "THE TRIAL COURT RELIED ON CONDUCT NOT IMPUTED TO APPELLANT WHEN IMPOSING A SEVERE SENTENCE."

{¶ 24} In her final assignment, Peterson asserts that the evidence adduced at trial did not prove beyond reasonable doubt that she "did anything to seriously harm Wright."   Accordingly, Peterson argues that the sentence imposed by the trial court was

excessive.

**{¶ 25}** Initially, we note that the State did not have to prove that Peterson "seriously harmed" Wright, only that she knowingly caused or attempted to cause harm to Wright or her unborn baby. As stated in the first assignment, the evidence adduced by the State established that Peterson hit Wright in the face, sprayed her with mace, and kicked her after she fell to the ground. Thus, the State proved beyond a reasonable doubt that Peterson assaulted Wright.

**{¶ 26}** As we recently held in *State v. Grove*, 2d Dist. Montgomery No. 24037, 2010-Ohio-6101, ¶ 61:

**{¶ 27}** "A trial court that imposes a sentence for a misdemeanor has discretion to determine the most effective way to achieve the purposes and principles of misdemeanor sentencing, which are to protect the public from future crime by an offender and to punish the offender. R.C. 2929.21(A) and 2929.22(A). The court may impose any available sanction or combination of sanctions. R.C. 2929.22 (A). In imposing a sentence for a misdemeanor, the trial court must consider the factors set out in R.C. 2929.22(B)(1)(a) through (e), and the failure to do so constitutes an abuse of discretion. R.C. 2929.22(B)(1); *State v. Wagner* (1992), 80 Ohio App.3d 88 * * * . If the sentence imposed is within permissible statutory limits, a reviewing court will presume that the trial court considered the sentencing factors in R.C. 2929.22(B), absent a showing to the contrary." *State v. Johnson*, Greene App. No. 04-CA-126, 2005-Ohio-6826, ¶ 9.

{¶ 28}  The record reveals that the trial court fully considered Peterson's conduct, her lack of acceptance of responsibility, and her violent behavior.  Peterson's sentence is within the statutory range for misdemeanors of the first degree. R.C. 2929.24(A)(1).  The trial court noted that Peterson denied assaulting Wright after she was found guilty and refused to take any responsibility for her actions in that regard.  The trial court also noted that Wright was pregnant at the time of the assault and that Peterson used excessive force. Lastly, we note that the trial court suspended 150 days of Peterson's 180-day jail sentence, leaving her with but thirty days to serve.

There being no merit to Peterson's second assignment of error, it is overruled.

{¶ 29}  All of Peterson's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Troy B. Daniels
Ben Swift
Hon. John S. Pickrel