[Cite as *State v. Dolphin*, 2014-Ohio-3434.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

       Plaintiff-Appellee

v.

IAN J. DOLPHIN

       Defendant-Appellant


Appellate Case No.    25695

Trial Court Case No.   2011-CR-3746


(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of August, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JENNIFER D. BRUMBY, Atty. Reg. No. 0076440, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}   Defendant-Appellant, Ian Dolphin, appeals from his conviction and sentence on one count of Burglary, a third-degree felony.  After pleading no contest to the charge, Dolphin was sentenced to up to five years of community control, and was ordered to pay the victim, Ebony Peake, $4,464 in restitution.

{¶ 2}   Dolphin contends that the trial court erred in overruling his motion to suppress fingerprint evidence records that were obtained from the Miami Valley Regional Crime Lab (MVRCL).  Dolphin also contends that the trial court abused its discretion in ordering him to pay $4,464 in restitution.

{¶ 3}   We conclude that the trial court did not err in overruling the motion to suppress.  While the release of the fingerprint records may have violated R.C. 2953.53(D), which prohibits release of sealed records, the fingerprint records fall within an exemption from suppression contained in R.C. 2953.56(B).

{¶ 4}   We further conclude that the trial court did not abuse its discretion in awarding restitution.  Although there was no documentation pertaining to the victim's original purchase of jewelry that was alleged to have been stolen, the trial court found the victim's testimony credible, and the trial court is in the best position to assess credibility.  In addition, both the victim and her jeweler indicated that she had purchased the jewelry from the jeweler.  Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

{¶ 5}   On March 30, 2011, Dayton Police officers responded to a report of a burglary at 4372 Free Pike, in Dayton, Ohio.  During the investigation, an evidence technician obtained

latent fingerprints from the residence. No suspect had been named at the time. Subsequently, Anthony Morelan, who works in the Bureau of Identification for the Dayton Police Department, entered the latent prints into the Automated Fingerprint Identification System (AFIS), and received a list of possible suspects. Morelan found one set of prints that he thought matched, but the demographics had been removed from the system, and the only information available was that the records had been sealed. Morelan notified the case detective, Matthew Locke, and provided him with the AFIS number. Morelan also recommended that Locke contact the MVRCL.

{¶ 6}    When Locke contacted the MVRCL, an unidentified person told him that the AFIS number came back to an individual named Ian Dolphin. This person additionally said that the records were sealed and could not be released without a court order. Locke then obtained a Bureau of Motor Vehicles photo of Dolphin and showed it to Peake, who said she did not know Dolphin, that he had never been in her home, and that he did not have permission to take her property.

{¶ 7}    After talking to Peake, Locke prepared an application and an order and entry for a court order requesting that the MVRCL records be unsealed. After securing a court order from a judge in Dayton Municipal Court, Locke obtained Dolphin's fingerprint card from MVRCL. He then provided the card to Morelan, who matched the prints on the card to the latent prints taken from Peake's home. The original fingerprints had been taken from Dolphin in March 2008, when he was arrested in connection with a prior charge. However, the grand jury returned a no true bill in that case, and the records were sealed.

{¶ 8}    After Dolphin was identified, he was indicted by the grand jury on one count of burglary, a third-degree felony. Dolphin filed a motion to suppress evidence, which was overruled in January 2013. Dolphin then pled no contest to the charge, and was sentenced as

indicated above.   Dolphin now appeals from his conviction and sentence.

## II.   Did the Trial Court Err in Overruling the Motion to Suppress?

{¶ 9}     Dolphin's First Assignment of Error states that:

The Trial Court Erred in Overruling the Defendant's Motion to Suppress the Fingerprint Records from the MVRCL under AFIS No. [* * * *].

{¶ 10}     Under this assignment of error, Dolphin contends that the trial court should have suppressed the fingerprint records because courts have no discretion or ability to unseal criminal records beyond the statutory exceptions listed in R.C. 2953.53(D).   In contrast, the State argues that even if the MVRCL erred in releasing Dolphin's fingerprint records, they are not subject to suppression, based on R.C. 2953.56(B).

{¶ 11}     The standards for reviewing decisions on motions to suppress are well established.   In ruling on motions to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*,   93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1973).   Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.   Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 12}     As was noted, the grand jury returned a no bill in connection with Dolphin's prior charge.   In such situations, R.C. 2953.52(A)(2) allows defendants to apply to the court for an order sealing the official records in the case.    Under R.C. 2953.51, " 'Official records' means

all records that are possessed by any public office or agency that relate to a criminal case, including, but not limited to: * * * all fingerprints and photographs * * *."

{¶ 13}    R.C. 2953.53(D) further provides that:

Upon receiving a copy of an order to seal official records pursuant to division (A) or (B) of this section or upon otherwise becoming aware of an applicable order to seal official records issued pursuant to section 2953.52 of the Revised Code, a public office or agency shall comply with the order and, if applicable, with the provisions of section 2953.54 of the Revised Code, except that it may maintain a record of the case that is the subject of the order if the record is maintained for the purpose of compiling statistical data only and does not contain any reference to the person who is the subject of the case and the order.

A public office or agency also may maintain an index of sealed official records, in a form similar to that for sealed records of conviction as set forth in division (F) of section 2953.32 of the Revised Code, access to which may not be afforded to any person other than the person who has custody of the sealed official records.

{¶ 14}    R.C. 2953.53(D) also provides that "[t]he sealed official records to which such an index pertains shall not be available to any person * * * ."   However, the sealed records may be made available to the following persons:

(1) To the person who is the subject of the records upon written application, and to any other person named in the application, for any purpose;

(2) To a law enforcement officer who was involved in the case, for use in the officer's defense of a civil action arising out of the officer's involvement in that

case;

(3) To a prosecuting attorney or the prosecuting attorney's assistants to determine a defendant's eligibility to enter a pre-trial diversion program established pursuant to section 2935.36 of the Revised Code;

(4) To a prosecuting attorney or the prosecuting attorney's assistants to determine a defendant's eligibility to enter a pre-trial diversion program under division (E)(2)(b) of section 4301.69 of the Revised Code.

R.C. 2953.53(D)(1)-(4).

{¶ 15}   Dolphin maintains that these exceptions are strictly limited, and that the Dayton Municipal Court could not have issued an order overruling the order of the prior court that sealed the records.   A recent decision of the First District Court of Appeals has concluded that "a court possesses inherent authority to unseal records that have been sealed, and may exercise that authority in unusual and exceptional cases." *State v. Vanzandt*, 2013-Ohio-2290, 990 N.E.2d 692, ¶ 1 (1st Dist.).   *Vanzandt* is not of particular assistance to the case before us, however, because it involved a motion filed in the same case and in the same court that had granted the defendant's motion to seal the record. *Id.* at ¶ 2-3.   The State in that case asked to unseal the record because the defendant, although acquitted of the original charge, was being prosecuted for retaliating against a confidential informant only three days after the records of the case had been sealed. *Id.* at ¶ 3.

{¶ 16}   In contrast, the case before us involves a rather unorthodox situation in which a police detective filed a request to unseal records with a different court than the one which issued the order sealing the records.   The police detective, by his own testimony, appears to have been unaware of the existence of statutes pertaining to sealing of records.   Furthermore, even if we

agreed with the reasoning in *Vanzandt*, the case before us does not involve any unusual or exceptional circumstances. Instead, it was a routine police investigation.[1]

{¶ 17} Despite the procedural irregularities, we agree with the trial court that it could not grant the motion to suppress even if a violation did occur. In this regard, R.C. 2953.56 provides that:

> Violations of sections 2953.31 to 2953.61 of the Revised Code shall not provide the basis to exclude or suppress any of the following evidence that is otherwise admissible in a criminal proceeding, delinquent child proceeding, or other legal proceeding:
>
> (A) DNA records collected in the DNA database;
>
> (B) Fingerprints filed for record by the superintendent of the bureau of criminal identification and investigation;
>
> (C) Other evidence that was obtained or discovered as the direct or indirect result of divulging or otherwise using the records described in divisions (A) and (B) of this section.

{¶ 18} Dolphin argues that this section does not apply to the case before us, because the fingerprint records were kept by the MVRCL, not the Bureau of Criminal Identification and Investigation (BCII). However, we disagree. Although the records were disclosed by MVRCL, the testimony at the suppression hearing indicated that fingerprint records gathered at the Montgomery County Jail are automatically transferred to both the MVRCL and BCII. Thus,

---

[1] We note that the Supreme Court of Ohio has accepted an appeal in *Vanzandt*, but no decision has yet been issued. *See State v. Vanzandt*, 136 Ohio St.3d 1491, 2013-Ohio-4140, 994 N.E.2d 462 (Table).

the fingerprint records in the case before were fingerprints filed for record with BCII, and fall within the exemption from suppression under R.C. 2953.56(B). In addition, the information used to prosecute Dolphin was discovered by using the fingerprint records, and was likewise, not subject to suppression under R.C. 2953.56(C).

{¶ 19} In light of the exemptions in R.C. 2953.56(B) and (C), we cannot find that the trial court erred in refusing to suppress the fingerprint records and the evidence discovered as a result of their disclosure.

{¶ 20} Accordingly, the First Assignment of Error is overruled.

III. Did the Trial Court Abuse Its Discretion in Ordering Restitution?

{¶ 21} Dolphin's Second Assignment of Error states that:

The Trial Court Abused Its Discretion on [sic] its March 18, 2013 Termination Entry, When Ordering Dolphin to Pay Restitution in the Amount of $4,464.00 to Ebony Peake.

{¶ 22} Under this assignment of error, Dolphin does not contest the entire amount of the restitution award; he challenges only the $3,200 ordered as restitution for two pieces of jewelry – a diamond bracelet and a diamond ring. Regarding these two items, Dolphin contends that the evidence of the witnesses was inconsistent and that there was a lack of concrete evidence about the existence of the jewelry and its value.

{¶ 23} R.C. 2929.18(A)(1) permits courts to order restitution "to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss." This subsection further states that "[i]f the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a

presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."

{¶ 24}   The victim has the burden of proving the amount of restitution, by a preponderance of the evidence.   *State v. Olson*, 2d Dist. Montgomery No. 25452, 2013-Ohio-4403, ¶ 8, citing *State v. Johnson*, 164 Ohio App.3d 792, 2005-Ohio-6826, 844 N.E.2d 372 (2d Dist.), ¶ 72.   In addition, because R.C. 2929.28 (A)(1) gives trial courts broad discretion in awarding restitution, we review the court's order for abuse of discretion.   (Citations omitted.)   *Id.*   An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' "   (Citation omitted.)   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 25}   In the case before us, the victim, Ebony Peake, testified that she purchased the diamond ring and tennis bracelet from Jai Bharwani, the manager of Gold Mine Jewelers.   The purchases occurred about six years prior to the restitution hearing, which was held on March 15, 2013.   Because the purchases were made so long ago, Peake did not have receipts.

{¶ 26}   At some point prior to the March 2011 burglary, Peake asked Bharwani for an appraisal of her jewelry.   At that time, Peake intended to insure the jewelry, but she did not get around to insuring it.   After the jewelry was stolen, Peake called Bharwani.   She told him that her jewelry had been stolen and that she would need receipts for the two items.   However, Bharwani no longer had documentation concerning these items.   As a result, in December 2012, Bharwani provided Peake with a written appraisal for the items, including the bracelet and ring, that he had previously evaluated.   According to this appraisal, the value of the bracelet and ring,

collectively, was $3,200. Peake explained that her delay in obtaining the appraisal report was caused by the fact that Dolphin's criminal case took a long time to be resolved.

{¶ 27}   Bharwani also testified at the restitution hearing.  He indicated that Peake and her fiancé had been customers for a very long time.  Bharwani could not recall when the jewelry in question was purchased, and he was not sure if he had records showing that it was purchased at his store.  He stated that he only kept records for seven years, as required.

{¶ 28}   Bharwani also could not recall when Peake brought the jewelry in to be appraised.  He first said he had originally appraised it less than two years earlier (which would mean that the jewelry had not been presented to him before the burglary).   However, Bharwani later emphatically stated that he had originally appraised the jewelry before Peake called to tell him that it had been stolen.  Bharwani also indicated that he does not take photos when he appraises jewelry; he makes handwritten notes and gives the jewelry back to the customer. When Peake asked him to make an evaluation for the court case, he still had all his notes available and was able to evaluate the missing items.

{¶ 29}   Although there was little documentation of the purchase, both Peake and Bharwani indicated that the jewelry had been purchased from Bharwani.  The trial judge noted that Peake had reported the missing jewelry immediately to the police, and specifically stated that he found Peake credible.  "The credibility of the evidence was for the trial court to determine, because it heard the evidence directly."  *Olson*, 2d Dist. Montgomery No. 25452, 2013-Ohio-4403, at ¶11, citing  *State v. Myles*, 2d Dist. Montgomery No. 25297, 2013-Ohio-2227, ¶ 21.  The trial court was in the best position to evaluate credibility, and we cannot say that the court acted arbitrarily, unreasonably, or capriciously in awarding Peake the value of the missing items.

**{¶ 30}**   Based on the preceding discussion, the Second Assignment of Error is overruled.


## IV.   Conclusion

**{¶ 31}**   All of Dolphin's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.



Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Jennifer D. Brumby
Hon. Timothy N. O'Connell