[Cite as *State v. Kirchgessner*, 2022-Ohio-3944.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2022-CA-1 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-370 |
| | : | |
| BRITANEY N. KIRCHGESSNER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of November, 2022.

. . . . . . . . . . .

PAUL M. WATKINS, Atty. Reg. No. 0090868, Assistant Prosecuting Attorney, Miami County Prosecutor's Office, Appellate Division, Safety Building, 201 West Main Street, Troy, Ohio 45373
      Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088791,  120 West Second Street, Suite 1717, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Britaney N. Kirchgessner appeals from her convictions, on her no contest pleas, for one count of aggravated vehicular manslaughter and one count of operating a vehicle while under the influence ("OVI"). The charges arose as a result of a car accident in which Kirchgessner's seven-year-old son was killed while Kirchgessner was driving. We affirm the judgment of the trial court.

{¶ 2} Kirchgessner was indicted on September 20, 2021. She was arraigned on September 27, 2021. While the court was advising her of the potential penalties she faced, Kirchgessner advised the court that, due to the accident, "like thirty to fifty percent" of her brain did not function properly, "so just understanding all the words and numbers" confused her. The court entered not guilty pleas on Kirchgessner's behalf.

{¶ 3} Kirchgessner withdrew her not guilty pleas and pled no contest on November 12, 2021. At the plea hearing, she acknowledged that she was the person named in the indictment, and she stated that she was 28 years old and had an eleventh-grade education. Kirchgessner stated that she could read and write and that she suffered from depression, post-traumatic stress-disorder, and anxiety, and that she took the medication Paxil, but it did not interfere with her ability to understand the proceedings. She stated that she was pleading no contest of her own volition.

{¶ 4} The court asked defense counsel if he believed Kirchgessner to be competent to enter her pleas; counsel responded that he had met and spoken with Kirchgessner, discussing the case, and that he had "no reason to believe" that she was not competent.

{¶ 5} Kirchgessner stated that she was not under any supervision at the time of the hearing and had never been convicted of a felony. She also stated that she had not been threatened, forced, or coerced into entering her pleas and that no promises had been made in exchange for her pleas. Kirchgessner indicated her understanding that she was pleading to the indicted offenses. Kirchgessner identified her plea form and stated that she had read it. The following exchange occurred:

THE COURT: * * * Did you understand what you read?

MS. KIRCHGESSNER: Kind of, sort of, yes.

THE COURT: Are there things that you wanted – that you – the things that you did not understand, did you go over those with your attorney, Mr. Hemm [Defense Counsel]?

MS. KIRCHGESSNER: Yes.

THE COURT: Did he make – provide a clearer answer to you?

MS. KIRCHGESSNER: Yes.

THE COURT: And he answered that question sufficiently?

MS. KIRCHGESSNER: Yes Ma'am.

THE COURT: Do you have any questions of the Court with regard to what is stated in it?

MS. KIRCHGESSNER: No Ma'am.

THE COURT: So do * * * do you now understand everything that's contained in it, based upon your discussions with your attorney?

MS. KIRCHGESSNER: For the most par[t], yes.

THE COURT: * * * Well, I want to make sure that you fully understand. So if there's anything you want to bring to my - - to the Court's attention, I will go over that with you.

MS. KIRCHGESSNER: From the – from the car accident, my brain is just pretty slow working too. So just – the words and stuff, I just don't really – I didn't understand. I've never really been in trouble before. So just – didn't understand a whole – a whole bunch of it. He gave me the gist of – the gist of the main stuff, you know, which is just basically what I need to know.

THE COURT: Well, that's true, and he can put those terms in more simple form for you to understand.

MS. KIRCHGESSNER: Yes.

THE COURT: There are some legal terms, and I'm basically going to go over with you everything that's contained in this.

MS. KIRCHGESSNER: Okay.

THE COURT: But I just want to make sure that you went over this with your attorney, you understood what he went over with you?

MS. KIRCHGESSNER: Yes.

THE COURT: And you currently – do you have any questions to advise the Court?

MS. KIRCHGESSNER: No.

THE COURT: * * * Did you sign the document?

MS. KIRCHGESSNER:   Yes.

THE COURT: * * * I'm going to show you * * * the page, the last page which is page 3.   Is that your signature there on the bottom?

MS. KIRCHGESSNER:   Yes Ma'am.

THE COURT:   Let the record reflect that Ms. Kirchgessner signed the plea form.   Mr. Hemm, did you go over the plea form with Ms. Kirchgessner?

MR. HEMM:   Yes I met with her over at the jail.   We sat down for a while and went over it.   We talked about a variety of things, but went through the plea form in its entirety, discussing the various parts of it and explaining things like the indefinite sentence.   We talked about Post Release Control.   We talked about what happens if that gets violated. Essentially, we went over all the terms and conditions in there, yes.

THE COURT:   And do you believe that she sufficiently understood that?

MR. HEMM:   Yeah, and she was able to ask questions of what she didn't understand.   We went over it again this morning to try and fill in some areas there.   * * *

THE COURT:   That's good.

MR. HEMM:   - yeah, she understands I think.

THE COURT:   And Ms. Kirchgessner, you're nodding your head. So is that true what Mr. Hemm had just advised the Court?

MS. KIRCHGESSNER: Yes Ma'am.

THE COURT: Okay. And you deem that sufficient?

MS. KIRCHGESSNER: Yes.

THE COURT: Do you believe the plea form to be accurate, Mr. Hemm?

MR. HEMM: I do.

{¶ 6} Kirchgessner acknowledged her understanding that by entering her no contest pleas she did not admit her guilt but admitted the truth of the facts as alleged in the indictment as to each charge. She acknowledged her understanding that her pleas could not be used against her in any civil or criminal proceedings. Kirchgessner acknowledged that by pleading no contest she was not disputing the facts, and if the allegations in the indictment were sufficient to state a felony, then upon her no contest plea the court must find her guilty. Kirchgessner indicated that she did not have any questions about the elements of her offenses. She further indicated that she understood that if the court found her guilty, it could immediately proceed to sentencing.

{¶ 7} After the State advised Kirchgessner of the facts supporting the offenses, the following exchange occurred:

THE COURT: * * * Ms. Kirchgessner, have you discussed your case with your attorney, Mr. Hemm?

MS. KIRCHGESSNER: Yes.

THE COURT: Have you had enough time to consult with him?

MS. KIRCHGESSNER: Yes.

THE COURT: Has he answered all your questions?

MS. KIRCHGESSNER: Yes.

THE COURT: Has he done what you've asked him to do?

MS. KIRCHGESSNER: I'm confused by that question. I asked him to –

Mr. HEMM: She said have I done everything you've asked me to do.

MR. KIRCHGESSNER: Yes.

THE COURT: Part of those discussions, did they include talking about the facts and elements the State would have to prove in order for the Court to find you guilty of an F2 Aggravated Vehicular Manslaughter and an M1 OVI?

MS. KIRCHGESSNER: Yes.

THE COURT: Were part of those discussions including possible defenses that could be raised on your behalf?

MR. HEMM: The discussions were a review of the entire case, in its entirety and the lack of defenses under the circumstances in this particular case.

THE COURT: Okay, as well as procedural options for the defendant, as far as motions?

MR. HEMM: Correct.

THE COURT: And that would be true, Ms. Kirchgessner?

MS. KIRCHGESSNER: Yes.

THE COURT: Are you satisfied with his advice, counsel and competence of Mr. Hemm, your attorney?

MS. KIRCHGESSNER: Yes.

{¶ 8} Kirchgessner advised the court that she understood the allegations set forth in the indictment to support each charge and what the State would have to prove to establish her guilt. Kirchgessner acknowledged that she was pleading no contest to the facts as alleged in each count; the court again advised her that her pleas were a complete admission of the facts as alleged in each count and that by pleading no contest she accepted the legal consequences that flowed from her pleas.

{¶ 9} The court noted that Senate Bill 201 required it to impose an indefinite sentence on aggravated vehicular manslaughter (Count 1), consisting of a minimum and a maximum term, and Kirchgessner indicated that she understood. She further indicated her understanding that the court would select the minimum term from the range of two to eight years. The court advised Kirchgessner that this offense required a mandatory prison term that was "non-reducible," and she indicated that she understood. The following exchange occurred:

THE COURT: * * * Now after the Court picks the minimum term or minimum sentence, the maximum sentence for Court 1 will automatically be an additional fifty percent of whatever is chosen from the minimum term.

MR. HEMM: Remember the example I gave you? If she gives you four years, your sentence would be like four, and then half of that would be six. The minimum served would be four, but the Parole Board could decide

that if you are not doing what you're supposed to do while you're in the institution they could make you stay potentially longer.

MS. KIRCHGESSNER: (Inaudible)

MR. HEMM: You'd be entitled to have a hearing on that.

MS. KIRCHGESSNER: Okay.

* * *

MR. HEMM: Remember us discussing that?

MS. KIRCHGESSNER: Yes. Yes I do.

MR. HEMM: Okay.

MS. KIRCHGESSNER: Sorry Ma'am. I just – I'm real slow; I've never been in trouble before. I don't understand a lot of things you ask.

THE COURT: I understand. Do you need any further examples of that?

MS. KIRCHGESSNER: No.

{¶ 10} Kirchgessner stated that she understood that the maximum sentence on aggravated vehicular manslaughter was 12 years, if the court were to impose the maximum minimum term of eight years as the minimum plus four additional years added to the eight years. She stated that she understood that the offense carried a maximum fine of $15,000 and a mandatory driver's license suspension for life. Kirchgessner stated that she understood that the OVI offense (Count 2) carried a definite sentence, including a mandatory three days in jail or a driving intervention program, with up to 180 days in jail, as well as a mandatory minimum fine of $375 up to $1,075. She acknowledged that

OVI carried a mandatory driver's license suspension of one to three years and six points on her driver's license. After being advised of these potential penalties, Kirchgessner indicated that she had no questions.

{¶ 11} Kirchgessner indicated her understanding that the court could impose additional sanctions, such as court costs and restitution, if applicable. She stated that she understood the presumption that she would be released upon completion of her minimum term but that the presumption could be overcome. When the court asked Kirchgessner if she understood that the Ohio Department of Rehabilitation and Correction ("ODRC") could schedule a hearing during her prison term to consider specific issues relevant to her release, she responded that she did. She acknowledged her understanding that the ODRC could make specific findings and keep her in prison beyond her minimum term, and the ODRC could do so more than once provided that it conducted the type of hearing required by law. Kirchgessner also stated that she understood that if she were kept in prison for her maximum term, she must be released upon completion of that term.

{¶ 12} Kirchgessner waived any advisement about felony probation or community control because she was not eligible due to her mandatory prison term. The court advised Kirchgessner about mandatory post-release control for 18 months to three years, supervised by the Adult Parole Authority, and the consequences of violating post-release supervision, as well as the consequences of a felony conviction while on supervision, and she indicated her understanding. Kirchgessner stated that she understood that her sentences would be served concurrently.

{¶ 13} The court then advised Kirchgessner of the individual constitutional rights she would waive by pleading no contest; after being informed of each right, she acknowledged her understanding. She also acknowledged her appellate rights. The court then asked Kirchgessner if she had any questions about anything they had discussed, and she responded that she did not. She acknowledged that everything the court went over with her was reflected in her plea form. The court asked Kirchgessner if she had any questions for defense counsel, and she replied that she did not. Kirchgessner then entered her no contest pleas, and the court found her guilty of both counts.

{¶ 14} Finally, the court advised Kirchgessner that it would order a presentence investigation report prior to sentencing. On January 3, 2022, the court imposed an indefinite sentence of seven to 10.5 years and a $15,000 fine on the aggravated vehicular manslaughter and a sentence of six months and a $1,075 fine on the OVI; the sentences were ordered to be served concurrently. Kirchgessner was also ordered to pay court costs, and her driver's license was suspended for life.

{¶ 15} Kirchgessner asserts three assignments of error on appeal. Her first assigned error is as follows:

THE COURT ERRED WHEN IT FOUND THAT THE DEFENDANT-APPELLANT MADE A KNOWING, INTELLIGENT AND VOLUNTARY PLEA.

{¶ 16} Although Kirchgessner acknowledges that the trial court properly advised her at the plea hearing of the rights she was waiving, she contests her "understanding

and ability * * * to make a knowing and intelligent plea" due to her "mental status," which she repeatedly raised. Specifically, she asserts that she "indicated on multiple occasions that, because of the accident, she lost 47% of her brain function which caused her to have drastic difficulties with comprehension," pointing to statements made at the sentencing hearing. She argues that her inability to understand "was never addressed" by counsel or the court until the end of the sentencing hearing.

{¶ 17} The State responds that Kirchgessner provided no proof at any point of her alleged loss of brain function and that she "clearly consulted with her attorney throughout all proceedings." According to the State, defense counsel "spent a significant time" answering her questions and preparing with her for the change of plea hearing, to ensure that she understood what was happening, and the record reflects that Kirchgessner "was capable of consulting with her counsel with a reasonable degree of rational understanding." The State also points out that Kirchgessner answered the court's questions, confirmed that she had discussed various matters with her attorney, and indicated her understanding of the rights she was waiving by entering her plea. The State asserts that a competency determination was not necessary because the trial court had no reason to doubt Kirchgessner's competence and that defense counsel also confirmed his belief that Kirchgessner was competent to enter her plea and understood the plea.

{¶ 18} We have noted that "[d]ue process requires that a defendant's plea be knowing, intelligent, and voluntary," and compliance with Crim.R. 11(C) ensures that the constitutional mandate is followed. *State v. Brown*, 2d Dist. Montgomery No. 28966,

2021-Ohio-2327, ¶ 8, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *see also State v. McElroy*, 2d Dist. Montgomery No. 28974, 2021-Ohio-4026, ¶ 14.

{¶ 19} Crim.R.11(C)(2) requires that a trial court may not accept a no contest plea without personally addressing the defendant and:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a)-(c).

{¶ 20} As this Court further noted in *McElroy*:

Strict compliance with the constitutional advisements is necessary to demonstrate that the plea is consistent with due process. *Brown* [2d Dist.

Montgomery No. 28966, 2021-Ohio-2327] at ¶ 9. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *State v. Massie*, 2d Dist. Clark No. 2020-CA-50, 2021-Ohio-3376, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31.

On the other hand, a trial court must substantially comply with the notifications of non-constitutional rights contained in Crim.R. 11(C)(2)(a) and (b), and prejudice must be shown before a plea will be vacated. *State v. Easter*, 2016-Ohio-7798, 74 N.E.3d 760, ¶ 8 (2d Dist.). " 'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.' " *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 37, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

*McElroy* at ¶ 16-17.

**{¶ 21}** Kirchgessner mischaracterizes the record when she asserts that her competency was not addressed until the end of her sentencing. As set forth above, the court asked defense counsel if he believed Kirchgessner to be competent early in the change of plea hearing.

**{¶ 22}** In *State v. McCain*, 2021-Ohio-1605, 170 N.E.3d 966 (2d Dist.), we stated:

* * * "[t]he test for determining whether a defendant is competent * * * is

whether he * * * has sufficient present ability to consult with * * * his lawyer with a reasonable degree of rational understanding of the proceedings [pending] against him * * *." (Citations omitted.)  *Schooler* at ¶ 29.  In the context of a plea, the test, as appropriately modified, is whether the defendant has the ability to consult with his lawyer, whether he has a reasonable and rational factual understanding of the charges to which he is pleading guilty, and whether he has a reasonable and rational understanding of the rights he is waiving by pleading guilty.  *State v. Zachery*, 5th Dist. Stark No. 2004-CA-91, 2004-Ohio-6821, ¶ 20.

Factors often considered when determining a defendant's competence include doubts articulated by counsel, a defendant's "irrational behavior," a "defendant's demeanor," and any "prior medical opinion relating to competence * * *." *Schooler* at ¶ 27, quoting *State v. Rubenstein*, 40 Ohio App.3d 57, 60-61, 531 N.E.2d 732 (8th Dist.1987).  *See also Ferguson* at ¶ 18.

A defendant's low IQ or even a mild mental disability does not "necessarily" compel the conclusion the defendant is "incapable of entering a valid plea."  *Simpson* at ¶ 10.  *See also Zachery* at ¶ 22, citing *Atkins v. Virginia*, 536 U.S. 304, 306, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); *State v. Dooley*, 3d Dist. Allen No. 1-10-41, 2010-Ohio-6260, ¶ 21.

*Id.* at ¶ 7-9.

**{¶ 23}** Kirchgessner does not argue that the trial court failed to comply with the plea requirements in Crim.R. 11, and the record reflects a thorough plea colloquy.

Defense counsel also affirmatively represented his belief to the court that Kirchgessner was competent and, although Kirchgessner claimed to have limited brain function, the record before us does not support this assertion. There was no medical evidence presented in support of Kirchgessner's claim, and a competency evaluation was not requested.

{¶ 24} Kirchgessner stated that she had reviewed the plea form with defense counsel and that he had answered her questions. Defense counsel also stated that he and Kirchgessner had reviewed "all the terms and conditions" in the plea form. He stated that he believed she understood it, and that "she was able to ask questions of what she didn't understand." Defense counsel stated that they had reviewed it again the morning of the plea hearing, and Kirchgessner confirmed that this was true. Kirchgessner stated that she did not have any questions for the court.

{¶ 25} Kirchgessner advised the court that she had discussed her case with defense counsel, including all of the elements the State would be required to prove at trial, and that she had had sufficient time to do so. Defense counsel represented that they had reviewed the entire case, including the lack of defenses under the circumstances in this particular case and any procedural options. She stated that counsel had answered her questions and that he had done everything she asked of him. Kirchgessner also stated that she was satisfied with defense counsel's advice and competence.

{¶ 26} Kirchgessner acknowledged that her no contest pleas were a complete admission of the facts alleged in each count. The court thoroughly advised Kirchgessner

as to indefinite sentencing, and she indicated that she understood. She stated that she understood the maximum sentences and fines for each count. At the end of the hearing, the court asked Kirchgessner if she had any questions for the court or defense counsel, and she responded that she did not. Based upon the foregoing, we conclude that Kirchgessner's arguments about the voluntariness of her plea lack merit.

{¶ 27} Although not part of our analysis regarding the knowing, intelligent and voluntary nature of Kirchgessner's pleas, Kirchgessner repeatedly directs our attention to an exchange at sentencing in support of her assertion that she was unable to understand the proceedings. We conclude that the exchange at issue does not support that conclusion. Near the end of sentencing, the following exchange occurred:

THE COURT: Do you understand that you have a right to appeal this Court's decision?

MS. KIRCHGESSNER: (Crying) To be honest with you, Ma'am, I don't know what none of this stuff means. I've never been in trouble, as you know. I don't really know what you're saying at all; what any of this stuff.

THE COURT: Well you keep telling that you do.

{¶ 28} At a bench conference, the exchange continued as follows:

THE COURT: Ms. Kirchgessner?

MS. KIRCHGESSNER: (Crying) Yes Ma'am.

THE COURT: All right. We've gone through quite a bit of information with you today, and previously at your plea. I've asked you

numerous times about what we were talking about and you said that sufficed. That you – you've responded appropriately here in the courtroom today. You've understood the significance of each of these hearings. * * *

* * *

MS. KIRCHGESSNER: Just keep going through it. Just keep going through it. I'm mentally challenged. I died in the car accident too. Lost forty-seven percent of my brain. I don't remember people's names; I just do what I'm told. That's it.

THE COURT: * * * I have a hard time believing that. This is a very trying procedure in the sense of it has severe consequences to you. But that's part of the actions that you're being held accountable for.

MS. KIRCHGESSNER: Okay.

THE COURT: The Court will note for the record that the Defendant has answered appropriately to the Court's questions, has responded with – referring to her attorney for any clarification. It's only as we get to the – the final advisement about the right to appeal that she raises this issue. So the Court will make the finding that she is well aware of what she's been doing, the consequences of her actions and her rights.

{¶ 29} The court's comments about Kirchgessner awareness of the proceedings specifically encompassed the plea hearing. Kirchgessner demonstrated an ability to consult with defense counsel, a rational understanding of the charges against her, and the rights she waived by pleading no contest. The trial court reasonably concluded that

Kirchgessner was capable of entering her plea.

{¶ 30} Kirchgessner's first assignment of error is overruled.

{¶ 31} Kirchgessner's second assignment of error is:

> THE COURT ABUSED ITS DISCRETION WHEN IT IMPOSED THE MAXIMUM FINE UPON THE DEFENDANT-APPELLANT AT SENTENCING.

{¶ 32} Kirchgessner asserts that her offenses "did **not** fall under the mandatory sentencing statutes" and thus that the trial court "did not have a statutory obligation to impose the maximum fine against her." Kirchgessner asserts that she "was clearly indigent" because she qualified for and used a public defender to represent her in the case. She also points out that, in light of her mandatory sentence, she would be unable to earn any income for the next seven to 10.5 years and that "her 47% loss in cognitive brain function" would likely require her to rely on "a fixed disability income" when she was released from prison.

{¶ 33} The State responds that an abuse of discretion is not demonstrated and that the maximum fines imposed were not contrary to law. The State asserts that there was no information in the record to support Kirchgessner's claim that she lost 47% of her brain function other than her self-serving statement, and there also was no evidence to support her claim that she would have to rely on government assistance in the future due to a loss of brain function.

{¶ 34} As noted above, Kirchgessner acknowledged her understanding of the maximum potential fines at the plea hearing, and no objection was raised to the imposition

of the fines at sentencing. "Ordinarily, a failure to bring an error to the attention of the trial court at a time when the court could correct that error constitutes a waiver of all but plain error." *State v. Johnson*, 164 Ohio App.3d 792, 2005-Ohio-6826, 844 N.E.2d 372, ¶ 22 (2d Dist.), citing *State v. Wickline*, 50 Ohio St.3d 114, 552 N.E.2d 913 (1990).

{¶ 35} Further, R.C. 2929.18(A)(3)(b) provides that for a felony of the second degree, the maximum fine is not more than $15,000, and R.C. 4511.19(G)(1)()(iii) provides for a fine of not less than $375 and not more than $1,075 for the OVI offense. Thus, Kirchgessner's fines are not contrary to law.

{¶ 36} The State cites our opinion in *State v. Phillips*, 2d Dist. Montgomery No. 29087, 2022-Ohio-1262, in which we stated:

Before imposing a financial sanction (such as a supervision fee) as part of a sentence, trial courts are required to consider a defendant's present and future ability to pay the financial sanction at the sentencing hearing. R.C. 2929.19(B)(5); R.C. 2929.18(A)(5)(a)(i). To satisfy this duty, a trial court need not expressly state that it considered an offender's ability to pay. *State v. Garrett*, 2d Dist. Montgomery No. 25426, 2013-Ohio-3035, ¶ 7; *State v. Parker*, 2d Dist. Champaign No. 2003-CA-17, 2004-Ohio-1313, ¶ 42. "The record should, however, contain 'evidence that the trial court considered the offender's present and future ability to pay before imposing the [financial sanction].' " *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 57 (2d Dist.), quoting *State v. Robinson*, 3d Dist. Hancock No. 5-04-12, 2004-Ohio-5346, ¶ 17. If "the

trial court fails to make an explicit finding on a defendant's relative ability to pay, this court has observed that a trial court's consideration of this issue may be 'inferred from the record under appropriate circumstances.' " *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 49 (2d Dist.), quoting *Parker* at ¶ 42. For example, "[t]he trial court may comply with its obligation by considering a presentence investigation report ('PSI'), which includes information about the defendant's age, health, education, and work history." (Citation omitted.) *State v. Willis*, 2d Dist. Montgomery No. 24477, 2012-Ohio-294, ¶ 4. *Accord State v. Hull*, 2d Dist. Clark No. 2016-CA-5, 2017-Ohio-7934, ¶ 9-10.

*Id.* at ¶ 23.

**{¶ 37}** Although the trial court did not expressly find that Kirchgessner had a present or future ability to pay her financial sanctions, at the plea hearing the court advised Kirchgessner that the PSI would provide the court with more information relevant to sentencing. The trial court's judgment entry stated that it had considered the PSI. The PSI stated that, for five years before the offenses at issue in this case, Kirchgessner had lived in a camper on the property of G&C Raw Dog Food, and she worked there at the time of her offenses; her grandparents owned the property, and Kirchgessner was the office manager. In the section relating to Kirchgessner's most recent employer contact information, the PSI reflects that someone at the place of employment advised that Kirchgessner "did a good job" and was "definitely a candidate for re-employment." Further, in the "Physical Health Section" of the PSI, it stated that, pursuant to information

provided by Kirchgessner, she had "Brain issues" resulting from the offenses; however, she had provided no evidence of these issues beyond her own statements. By considering the contents of the PSI, we infer that the trial court had fulfilled its duty to consider Kirchgessner's present and future ability to pay her financial sanctions.

**{¶ 38}** The second assignment of error is overruled.

**{¶ 39}** Kirchgessner's third assignment of error states:

COUNSEL FOR DEFENDANT-APPELLANT WAS INEFFECTIVE IN

NOT REQUESTING A HEARING AS IT RELATED TO THE INDIGENCY

OF DEFENDANT-APPELLANT AND THE FINE THAT WAS IMPOSED.

**{¶ 40}** Kirchgessner argues that, even if the fines were not excessive and the trial court did not err in imposing them, defense counsel had a duty to request a hearing on her financial circumstances "in order to make a clear and adequate record" of her indigency and inability to pay in the future. She argues that, by filing an indigency affidavit but not requesting any type of hearing or to making any mention of her indigency on the record, counsel was ineffective.

**{¶ 41}** As this Court has noted:

Alleged instances of ineffective assistance of trial counsel are reviewed under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on an ineffective assistance claim, a defendant must establish: (1) that his or her trial counsel's

performance was deficient and (2) that the deficient performance resulted in prejudice. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

To establish deficient performance, it must be shown that trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

To establish prejudice, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

*State v. Treece*, 2d Dist. Montgomery No. 29258, 2022-Ohio-1610, ¶ 7-9.

{¶ 42} As noted above, R.C. 2929.18(A)(3)(b) governs the imposition of the fine on aggravated vehicular manslaughter. In contrast, R.C. 2929.18(B)(1) governs the imposition of mandatory fines for certain offenses and provides in part: "If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender."

{¶ 43} While Kirchgessner argues that defense counsel "filed an indigency affidavit" on her behalf, the court's docket reflects that Kirchgessner applied for representation by the public defender. Counsel did not file the type of affidavit contemplated by R.C. 2929.18(B), which did not apply to Kirchgessner's offense of aggravated vehicular manslaughter.

{¶ 44} Further, R.C. 4511.19 (G)(1)(a)(iii) governed the imposition of the fine for OVI. As noted by the Tenth District:

Pursuant to R.C. 4511.19(G)(1)(a)(iii), a fine of no less than $375 and no more than $1,075 is required to be imposed upon an OVI conviction. The provision in R.C. 2929.18(B)(1) that allows for the waiver of a fine only applies to fines described in that division. Because appellant's mandatory fine for his OVI conviction is set forth in R.C. 4511.19, not R.C. 2929.18(B)(1), that provision does not allow for the waiver of that fine. Appellant has not provided any other statutory support for the waiver of such a fine. Thus, the trial court did not abuse its discretion when it declined to

waive the mandatory fines in this case.

*State v. Small*, 10th Dist. Franklin Nos. 14AP-659, 14AP-663, 14AP-660, 14AP-661, 2015-Ohio-3640, ¶ 42.

**{¶ 45}** As the State asserts, it is clear there was no mandatory fine for aggravated vehicular manslaughter for which an affidavit of indigency could be filed, and the court did not have the discretion to forego imposing the mandatory fine on the OVI. As noted above, a trial court may hold a hearing to determine an offender's ability to pay a financial sanction but is not required to do so. R.C. 2929.18(E). Defense counsel's failure to request a hearing on the fines herein did not render counsel's assistance ineffective.

**{¶ 46}** In *State v. Lee*, 7th Dist. Belmont No. 19 BE 0018, 2020-Ohio-3580, the appellant asserted that counsel had been ineffective for failing to object to a total fine of $10,000 based on the following facts: her ten-year sentence, her age (49); her high school education; her physical ailments, including asthma, diabetes, pancreatitis, auto-immune disease, and a herniated disc; and her a crack-cocaine addiction. *Id.* at ¶ 71. The Seventh District cited the Fourth District's decision in *State v. Creech*, 4th Dist. Scioto No. 92 CA 2053, 1993 WL 235566, *6 (June 30, 1993), which held that lack of an objection to a fine is insufficient to establish that trial counsel was ineffective. Therefore, the court in *Lee* found that appellant's trial counsel was not ineffective for failing to object to the fine or to request a separate hearing regarding the fine. *Lee* at ¶ 72. On this basis, we conclude that ineffective assistance also is not demonstrated in this case.

**{¶ 47}** Kirchgessner's third assignment of error is overruled.

**{¶ 48}** Having overruled Kirchgessner's assigned errors, the judgment of the trial

court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Paul M. Watkins
Adam J. Arnold
Hon. Jeannine N. Pratt