[Cite as *State v. Craig*, 2023-Ohio-3777.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230112 |
| | | TRIAL NOS. 22TRC-16348A, C |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| HENRY CRAIG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 18, 2023

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Victoria L. Lowry*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1}  Following his involvement in an automobile accident with a vehicle driven by Ron Mack, defendant-appellant Henry Craig pled guilty to operating a vehicle while under the influence of alcohol and/or drugs ("OVI") in violation of R.C. 4511.19(A)(1)(a) and no contest to the offense of driving left of center in violation of Cincinnati Municipal Code 506-73.

{¶2}  After conducting a hearing to determine the amount of restitution owed to the victim of the offense, the trial court sentenced Craig. For the OVI offense, the court imposed a sentence of 180 days in jail, with 170 of those days suspended and the remaining ten to be served at the Community Alternative Sentencing Center. The court additionally placed Craig on community control for two years, with the conditions that he not consume alcohol and undergo random drug screens, imposed a license suspension, and ordered him to pay $5,000 in restitution to Ron Mack. For the offense of driving left of center, the trial court imposed a $100 fine and court costs.

{¶3}  The sentencing entries issued by the trial court were in accordance with the sentences imposed in open court with two exceptions. First, the sentencing entry for the OVI offense reflected the imposition of a $400 fine. Second, the sentencing entry for the offense of driving left of center reflected that Craig was sentenced to two years of community control.

{¶4}  Craig appeals his convictions. In three assignments of error, he challenges the trial court's imposition of restitution, argues that his no-contest plea was not entered knowingly, intelligently, and voluntarily, and challenges the sentences imposed. Following our review of the record, we find merit to each of Craig's arguments. We hold that the trial court abused its discretion in awarding restitution

2

in the amount of the cost to repair the vehicle without determining the value of the vehicle immediately prior to the accident. It also failed to comply with Traf.R. 10(D) when accepting Craig's no-contest plea to driving left of center and failed to impose the $400 fine for the OVI offense in open court.

{¶5} We accordingly vacate Craig's no-contest plea to the offense of driving left of center, as well as reverse the portions of the sentence imposed for the OVI offense imposing restitution and a $400 fine, and remand the cause for further proceedings.

## I. Restitution

{¶6} In his first assignment of error, Craig argues that the trial court erred when it ordered him to pay $5,000 in restitution.

{¶7} We review a trial court's award of restitution in a misdemeanor case for an abuse of discretion. *State v. Moore*, 1st Dist. Hamilton No. C-220421, 2023-Ohio-3318, ¶ 10, quoting *State v. Miles*, 1st Dist. Hamilton No. C-210226, 2021-Ohio-4581, ¶ 5. An abuse of discretion occurs in the award of restitution where the ordered restitution "does not bear a reasonable relationship to the actual loss suffered." *Id.*, quoting *In re A.B.*, 1st Dist. Hamilton No. C-210010, 2021-Ohio-4273, ¶ 8. An abuse of discretion can also be found where there is not "competent, credible evidence in the record from which the court can discern the amount of restitution to a reasonable degree of certainty." *Id.*, quoting *State v. Caldwell*, 2023-Ohio-355, 207 N.E.3d 928, ¶ 14 (4th Dist.).

{¶8} At the restitution hearing, Tyrone Mack testified that, at the time of the accident on July 11, 2022, he was the registered owner of the vehicle involved in the

accident with Craig. The vehicle was a 2007 Chevrolet Tahoe. Tyrone[1] stated that in August of 2022, he transferred the vehicle to his brother Ron, because "it was his all along," even though it had been titled in Tyrone's name.

{¶9} Ron, who was driving the vehicle when the accident occurred, testified that he had purchased the car and placed the title in his brother's name. Ron stated that he paid $6,864.37 to have the vehicle repaired after the accident, and he submitted receipts documenting the expenses that he personally incurred for these repairs. According to Ron, all of the damage to the vehicle was caused by the accident, and none was pre-existing.

{¶10} At the restitution hearing, Craig entered into evidence several exhibits documenting the value of the vehicle. These documents included a Kelley Blue Book report listing the vehicle's trade-in value to be $2,234 to $3,669; a Kelley Blue Book report listing the vehicle's value in a private-party sale to be $4,117 to $6,244; and an Experian vehicle history report, which revealed that the vehicle had been involved in an accident prior to the one caused by Craig and gave the vehicle a below average AutoCheck score (this score correlated to how likely the vehicle was to still be on the road in five years).

{¶11} Craig testified that he worked one full-time and two part-time jobs and estimated that he earned approximately $1,700 per month in take-home pay. He also stated that he paid $825 a month in rent, as well as had additional monthly expenses, including utilities and food.

---

[1] We refer to Tyrone Mack and Ron Mack by their first names, as they have the same surname.

### A. Determination of Proper Victim

**{¶12}** Craig first argues that the trial court erred in awarding restitution to Ron, whom he contends did not suffer an economic loss at the time of the accident. He argues that Tyrone, not Ron, was the titled owner and driver of the vehicle damaged in the accident.

**{¶13}** R.C. 2929.28(A)(1) provides that a trial court, when sentencing an offender for a misdemeanor offense, may order the offender to pay restitution to the victim of the offender's crime "in an amount based on the victim's economic loss." Article 1, Section 10a(D) of the Ohio Constitution provides that a victim is "a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act."

**{¶14}** The trial court correctly determined that Ron was a victim of Craig's offense. Although Tyrone was the titled owner of the vehicle at the time of the accident, Ron was driving the vehicle and personally paid to repair the damage caused to the vehicle by the accident. *See State v. Morales*, 1st Dist. Hamilton No. C-220355, 2023-Ohio-2459 (holding that in an aggravated-vehicular-assault case, the driver of the vehicle hit by the defendant was a victim under the definition of "victim" in Ohio Constitution, Article I, Section 10a(D)).

**{¶15}** The record also demonstrates that Ron suffered an economic loss. R.C. 2929.01(L) defines "economic loss" in relevant part as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense." Here, Ron submitted receipts detailing all expenses he incurred to repair the damage caused to the vehicle. The trial court, therefore, did not err in determining that Ron was a victim of the offense and that he suffered an economic loss.

5

### B.  Amount of Restitution

**{¶16}**  Craig next argues that the trial court erred in imposing $5,000 in restitution because that amount exceeded the amount of economic loss.

**{¶17}**  At the restitution hearing, after hearing testimony from Ron that he spent $6,864.37 on repairs to the vehicle and being presented with evidence from Craig about the Kelley Blue Book value of the vehicle for a trade-in and for a private-party sale, the trial court stated:

> So we don't need to speculate about, you know, where this—the value of this vehicle, or where it would land in the Kelly [sic] Blue Book or Experian, we don't need to speculate about any of that because in this case Mr. Mack actually spent the funds, he testified that the vehicle's been repaired because he laid out this money. So the $6,800 and some dollars seems entirely reasonable and appropriate.

**{¶18}**  The court then explained that R.C. 4511.19(G)(7)[2] provided a statutory cap of $5,000 on the amount of restitution that can be ordered, and it ordered that Craig pay Ron $5,000 in restitution.

**{¶19}**  This court recently addressed the amount of restitution that can be imposed for the damage caused to a vehicle in an automobile accident. In *Moore*, we recognized that while the damage to a vehicle may be determined by estimates setting forth the cost of repair, "[w]hen the cost to repair the vehicle exceeds its value, then

---

[2] R.C. 4511.19(G)(7) provides that if an offender fails to provide proof of financial responsibility, a trial court "may order restitution pursuant to section 2929.18 or 2929.28 of the Revised Code in an amount not exceeding five thousand dollars for any economic loss arising from an accident or collision that was the direct and proximate result of the offender's operation of the vehicle before, during, or after committing the offense for which the offender is sentenced under division (G) of this section."

the owner's damages are limited to the value of the vehicle immediately prior to the accident." *Moore*, 1st Dist. Hamilton No. C-220421, 2023-Ohio-3318, at ¶ 12, quoting *Caldwell*, 2023-Ohio-355, 207 N.E.3d 928, at ¶ 22.

**{¶20}** Here, the trial court awarded restitution in the amount of the cost incurred to repair the vehicle, to which it then applied the statutory cap. The court insinuated that the actual value of the vehicle was irrelevant, stating that it would not speculate about the vehicle's value because it was presented with evidence about the actual amount spent on repairs. Where there was evidence in the record via the Kelley Blue Book reports that the value of the vehicle was less than the amount spent on repairs, it was an abuse of discretion for the trial court to disregard that evidence and award restitution in the amount of the cost incurred for repairs. *See Moore* at ¶ 13 (it was an abuse of discretion to award restitution in the amount of the cost of a replacement vehicle when restitution should have been limited to the value of the vehicle just prior to the accident); *Caldwell* at ¶ 24 ("A court does not abuse its discretion in ordering restitution in the amount of a cost-to-repair estimate if there is no evidence showing that the value of the vehicle is less than the repair cost.").

**{¶21}** The trial court should have considered the evidence pertaining to the vehicle's value and determined the actual value of the vehicle. If the cost of repairs exceeded the vehicle's value, restitution should have been limited to the amount of the vehicle's value prior to the accident.

### C. Ability to Pay Restitution

**{¶22}** Craig last argues under this assignment of error that the trial court's imposition of restitution as a financial sanction was improper as Craig demonstrated an inability to pay.

7

**{¶23}** R.C. 2929.28(B) provides that "If the court determines a hearing is necessary, the court may hold a hearing to determine whether the offender is able to pay the financial sanction imposed pursuant to this section or court costs or is likely in the future to be able to pay the sanction or costs."

**{¶24}** This court has discussed whether R.C. 2929.28(B) obligates a trial court to consider an offender's ability to pay restitution. In *State v. Daniels*, 2015-Ohio-5348, 45 N.E.3d 266, ¶ 38-40 (1st Dist.), we stated:

> The state also contends the trial court has no obligation to consider a defendant's present and future ability to pay restitution for a misdemeanor offense, because the misdemeanor sentencing statutes do not contain a provision identical to R.C. 2929.19(B)(5).
>
> The state is correct that the misdemeanor sentencing statutes do not contain a provision identical to R.C. 2929.19(B)(5). Other appellate districts have read R.C. 2929.28(B) as requiring the sentencing court to consider the defendant's present and future ability to pay a financial sanction such as restitution. *See, e.g., State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-060, 2014-Ohio-2238, ¶ 34; *State v. Rohda*, 6th Dist. Fulton No. F-06-007, 2006-Ohio-6291, ¶ 15.
>
> We do not need to determine whether R.C. 2929.28(B) required the trial court to consider Daniels's present or future ability to pay, because the record in this case demonstrates that the trial court in fact did consider Daniels's ability to pay. The trial court presided over the sentencing hearing at which information concerning Daniels's work

history and income source was presented, and the court expressly rejected a finding of indigency.

{¶25} We similarly need not determine in this case whether R.C. 2929.28(B) obligated the trial court to consider Craig's ability to pay because the record clearly demonstrates that the trial court did, in fact, consider it. At the restitution hearing, Craig testified that he worked one full-time and two part-time jobs, and he discussed his monthly income and expenses. Craig's counsel argued to the trial court that Craig did not have the ability to pay, prompting the following colloquy between the trial court and Craig:

Court: I mean, your attorney says that you can't pay; is that right? You can't pay? You can't pay for the cost of what you did? Is that what you're telling me?

Craig: I'm not telling you that.

Court: Well, I want to hear it from you. Are you going to make good on this, or are we all wasting our time? Because I don't want to be the bearer of bad news, and I'm sorry, Mr. Mack, I don't know that you're going to get that $5,000. It just might be the case that Mr. Craig, you know—I don't know. So are you going to do this or not?

Craig: Yes, I got a job, why would I not pay it?

Court: Three jobs, right?

Craig: Why would I not pay it?

Court: I'm sorry, I couldn't understand you.

Craig: I said why would I not pay it.

Court: I'm asking, because your attorney—

9

Craig: It's my fault so I've got to deal with it but—I admit it.

Court: I appreciate that. I appreciate that. Because your attorney said repeatedly that you didn't have the ability to pay it. So I want to make that clear. I appreciate that. And I understand he's got a job to do, and he's making his argument, but I want to make clear, before I put somebody on probation, and a big part of probation on this case is going to be the payment of the restitution. Okay? I want to make that clear. I want that money paid. The sooner, the better. Do you understand what I want mean?

Craig: Yes, sir.

{¶26} This colloquy evidences both the importance that the trial court placed on Ron receiving restitution and the court's recognition that it did not want to set Craig up for failure by ordering restitution that he lacked the ability to pay. Because the trial court considered Craig's ability to pay before imposing restitution, we find Craig's argument to the contrary to be without merit.

{¶27} Craig's first assignment of error is sustained in part and overruled in part. Because the trial court abused its discretion in awarding restitution in the amount of the cost of repair without considering the evidence in the record about the value of the vehicle and without determining whether the cost of repair exceeded the vehicle's value, the trial court's imposition of $5,000 in restitution is reversed.

## II. No-Contest Plea

{¶28} In his second assignment of error, Craig argues that the trial court erred in accepting his no-contest plea, as it was not entered knowingly, intelligently, and

voluntarily. In support, he contends that the trial court failed to inform him of the effect of his no-contest plea to the minor-misdemeanor offense of driving left of center.

**{¶29}** Craig pled guilty to the OVI offense, a first-degree misdemeanor, and no contest to driving left of center. Prior to accepting Craig's guilty plea to the OVI offense, the court complied with Crim.R. 11(D) and informed Craig of the effect of the plea and determined that he was making the plea voluntarily. The court additionally informed Craig of the maximum penalty faced and the constitutional rights that he was waiving.

**{¶30}** The trial court engaged in no colloquy with Craig when accepting his no-contest plea to driving left of center. Other than the trial court asking for a reading of the facts as to that offense, it was not separately addressed at the plea hearing.

**{¶31}** Traf.R. 10(D) provides that "[i]n misdemeanor cases involving petty offenses, except those processed in a traffic violations bureau, the court may refuse to accept a plea of guilty or no contest and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty." Because Traf.R. 10(D) mirrors Crim.R. 11(E), which sets forth the trial court's obligations when accepting pleas in misdemeanor cases involving petty offenses, cases analyzing a trial court's duties under Crim.R. 11(E) are applicable to cases analyzing Traf.R. 10(D). *State v. Schuster*, 1st Dist. Hamilton Nos. C-220525, C-220526, and C-220649, 2023-Ohio-3038, ¶ 8, quoting *State v. Lyles*, 1st Dist. Hamilton Nos. C-210271, C-210272 and C-210273, 2022-Ohio-1414, ¶ 11.

**{¶32}** The trial court in this case was required to inform Craig that a no-contest plea "is not an admission of [his] guilt, but is an admission of the truth of the facts alleged in the complaint and such plea or admission shall not be used against

[him] in any subsequent civil or criminal proceeding." Traf.R. 10(B)(2). No such admonition was provided to Craig before his no-contest plea was accepted.

{¶33} In *Schuster*, the court stated that a defendant's "right to be informed of the effect of his no-contest pleas is nonconstitutional and substantial compliance with Traf.R. 10(D) is all that is required." *Schuster* at ¶ 11. The *Schuster* court explained that in cases where a trial court fails to substantially comply with Traf.R.10(D), the reviewing court must determine if the court partially complied or completely failed to comply. *Id.* at ¶ 14. In cases of partial compliance, the defendant is required to demonstrate prejudice in order to have the plea vacated. *Id.* But in cases where the trial court completely failed to comply with the rule, a showing of prejudice is not necessary. *Id.*

{¶34} Here, the trial court completely failed to comply with Traf.R. 10(D), and Craig was not required to establish prejudice resulting from the trial court's omission. Because the trial court failed to comply with Traf.R. 10(D) and inform Craig of the effect of his no-contest plea, that plea was not entered knowingly, intelligently, and voluntarily. Craig's second assignment of error is sustained.

### III. Sentencing

{¶35} In his third assignment of error, Craig argues that the trial court erred in the imposition of sentence.

{¶36} Craig first argues that the trial court erred in imposing a $400 fine for the OVI offense when that fine was not imposed in open court at sentencing. The state concedes this error.

{¶37} The trial court's sentencing entry for the OVI offense reflects that it imposed a $400 fine. However, the court did not impose this fine in open court at the

sentencing hearing. The record reflects that the court did intend to impose a fine, as it stated when imposing restitution as part of the sentence for the OVI offense "[t]hat [restitution] gets paid first before the fine [and] court cost or any other probation supervision fees."

{¶38} Pursuant to R.C. 4511.19(G)(1)(a)(iii), when an offender is convicted of OVI as a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a), the trial court shall sentence the offender to "a fine of not less than three hundred seventy-five and not more than one thousand seventy-five dollars." This fine is mandatory. *See State v. Kirchgessner*, 2022-Ohio-3944, 200 N.E.3d 374, ¶ 44 (2d Dist.), quoting *State v. Small*, 10th Dist. Franklin Nos. 14AP-659, 14AP-660, 14AP-661, and 14AP-663, 2015-Ohio-3640, ¶ 42 ("Because appellant's mandatory fine for his OVI conviction is set forth in R.C. 4511.19, not R.C. 2929.18(B)(1), that provision does not allow for the waiver of that fine."); *State v. Kelley*, 8th Dist. Cuyahoga No. 97389, 2012-Ohio-2309, ¶ 4.

{¶39} Pursuant to Crim.R. 43(A)(1), the defendant must be physically present at every stage of the criminal proceeding, including the imposition of sentence. "A trial court cannot impose a sentence in the sentencing entry that differs from that it imposed at the sentencing hearing." *State v. Vaughn*, 8th Dist. Cuyahoga No. 103330, 2016-Ohio-3320, ¶ 18. "When a sentence pronounced in open court is later modified and the judgment entry reflects the modification, the modification must have been made in open court in the defendant's presence." *State v. Williams*, 2016-Ohio-5827, 71 N.E.3d 592, ¶ 82 (1st Dist.).

**{¶40}** We therefore hold that the trial court erred by including the mandatory fine in the sentencing entry without imposing that fine in open court in Craig's presence. *See id.* at ¶ 83.

**{¶41}** Craig additionally argues in this assignment of error that the trial court erred in imposing a sentence of two years of community control for the offense of driving left of center when that sentence was not pronounced in open court and was improper in a minor-misdemeanor case. This argument has been rendered moot by our resolution of the second assignment of error, in which we held that Craig's no-contest plea to driving left of center was not entered knowingly, voluntarily, or intelligently.

**{¶42}** Craig's third assignment of error is accordingly sustained in part, and the portion of the sentence for the OVI offense imposing a $400 fine is reversed. On remand, the trial court must impose the mandatory fine in Craig's presence in open court. The remainder of the assignment of error is moot.

## IV. Conclusion

**{¶43}** Craig's no-contest plea to driving left of center is vacated because the trial court failed to advise him of the effect of the plea as required by Traf.R. 10(D). With respect to the sentence imposed for the OVI offense, the trial court's imposition of restitution and a fine are reversed because the trial court failed to consider evidence of the value of the vehicle immediately prior to the accident and determine whether the cost to repair exceeded the vehicle's value, and because the trial court failed to impose the mandatory fine in the presence of Craig in open court. This case is remanded for resentencing and further proceedings in accordance with the law and this opinion. The judgments of the trial court are otherwise affirmed.

14

Judgment accordingly.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.